UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
LV, et al., : 03 Civ. 9917 (RJH) (KNF)
:
                Plaintiffs, :
:
     -against- : **MEMORANDUM OPINION**
: **AND ORDER**
:
NEW YORK CITY DEPARTMENT OF :
EDUCATION, et al., :
                Defendants. :
:
------------------------------------------------------------x

      Presently before the Court is plaintiffs' renewed motion for class certification on behalf of a putative class of persons who have obtained favorable orders or stipulated settlements (collectively "orders"), relating to a child's statutory entitlement to free appropriate public education as provided by the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, but who have failed to obtain or may not obtain the timely implementation by defendants of the terms of such order or settlement. Specifically, plaintiffs allege that defendants' failure to implement policies or practices to enforce such orders in a timely fashion constitutes a systematic denial of their due process rights in contravention of 42 U.S.C. § 1983. Plaintiffs seek declaratory and injunctive relief in attaining system-wide reform in defendants' provision of free appropriate public education to disabled students. For the reasons set forth below, the Court grants plaintiffs' motion for class certification.

**BACKGROUND**

A. <u>IDEA's Statutory Framework</u>

The IDEA seeks to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). In effect, Congress sought to incorporate disabled students into the public education system by requiring school officials and parents of a disabled child to design an Individualized Education Program ("IEP") for each year of the child's education. *Polera v. Board of Education of the Newburgh Enlarged School District*, 288 F.3d 478, 482 (2d Cir. 2002) (stating that the IEP is "the central mechanism by which public schools ensure that their disabled students receive a free appropriate public education."); 20 U.S.C. §§ 1401(11), 1414(d). Under the statute, the IEP is a written statement that sets forth, *inter alia*, the child's present levels of educational performance, measurable annual goals, special education and related services and supplementary aids and services to be provided to the child, and program modifications or support for school personnel, as well as projected dates for the beginning of such services and modifications. *See* 20 U.S.C. § 1414(d)(1)(A).

Yet the IDEA's current statutory scheme also reflects a concern that "parental input into the creation of the IEP would not be sufficient to safeguard a child's right to a free and appropriate education," in that Congress also requires states to offer parents and disabled students procedural safeguards to challenge the decisions of local educational agencies. *Murphy v. Arlington Central School District Board of Education*, 297 F.3d 195, 197 (2d Cir. 2002). In accordance with this mandate, New York law provides a two-

tier system of administrative review. *Id*.; N.Y. Educ. Law § 4404 (McKinney 1999). Parents may first challenge the IEP determination through an impartial due process hearing, in which the decision of the presiding impartial hearing officer ("IHO") is binding on all parties unless appealed to a State Reviewing Officer ("SRO"). N.Y. Educ. Law § 4404(1); *see also* 8 N.Y.C.R.R. § 200.5(i)(1) (enabling a parent or school district to "initiate a hearing on matters relating to the identification, evaluation or educational placement of a student with a disability, or the provision of a free appropriate public education to a child.").[1] Upon appeal to the SRO, the SRO is empowered to review and modify "any determination of the impartial hearing officer relating to the determination of the nature of a child's handicapping condition, selection of an appropriate special education program or service and failure to produce such program." N.Y. Educ. Law § 4404(2); N.Y.C.R.R. 200.5(j)(1) ("Any party aggrieved by the findings of fact and the decisions of an impartial hearing officer … may appeal to a State review officer of the State Education department").[2]

B. Procedural Posture of the Action

Plaintiffs filed the initial complaint in this action on December 12, 2003 and subsequently amended the complaint on January 14, 2004. On February 2, 2004, plaintiffs LV, VSG, RC, AD, NA, ADJ, YG, LO, AP, RLB, RD, JYQ and HR moved for

---

[1] New York has created a complex administrative scheme to implement the mandates of the IDEA. Article 89 of the New York Education Law (entitled "Children with Handicapping Conditions"), N.Y. Educ. L. §§ 4401-4410-b, sets forth the two-tiered system of administrative review, while the State Education Department's regulations further detail the nature of the proceedings, the due process rights afforded to both parties and time limitations in rendering a decision for such hearings. *See Does v. Mills*, No. 04 Civ. 2919 (RWS), 2005 WL 900620, at *2 (S.D.N.Y. Apr. 18, 2005).

[2] Section 1415(i)(2)(A) of the IDEA further provides that a federal district court may review the findings and decision of the administrative review. 20 U.S.C. § 1415(i)(2)(A). However, a "plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Polera*, 288 F.3d at 483 (citing *Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir. 1995)).

class certification with HR as a representative plaintiff. On March 15, 2004, defendants cross-moved to dismiss HR's claims on the basis of standing issues. Shortly thereafter, plaintiffs and proposed intervenors CW, SS, MG, MS, ST, RZ, MC and JP moved to intervene and to amend the first amended complaint on March 26, 2004. The parties executed a stipulation on April 21, 2004, thereby enabling plaintiffs to file a second amended complaint. Defendants then moved to dismiss the claims asserted in the second amended complaint on May 5, 2004.

On September 16, 2004, plaintiffs withdrew their motion for class certification without prejudice and with leave to refile the motion to include claims asserted by CW, SS, MG, MS, ST, RZ, MC and JP, whose motion to intervene had been granted by the Court. Plaintiffs renewed their motion for class certification on October 25, 2004. Plaintiffs proposed the following class definition:

> all persons (1) who have obtained, or will in the future obtain, for the benefit of a child with disability, a favorable order by an IHO against, or stipulation of settlement placed on the record at an impartial due process hearing with, the New York City Department of Education, or who are children with disabilities who are the beneficiaries of such order or stipulation of settlement, and (2) who fail to obtain, or are at risk of failing to obtain, full and timely implementation of such order or settlement.

On January 6, 2005, the Court denied from the bench defendants' cross-motion to dismiss claims asserted by HR, as well as defendants' motion to dismiss the claims

asserted by LV, ADJ, MG, RZ, VSG, AD, NA, YG, LO, RD, AP, RLB, ST, MC and JP on the record.

## DISCUSSION

Plaintiffs seeking to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure bear the burden of establishing the four requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy – as well as showing that the class fits into one of three categories set forth in Rule 23(b). *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999); *Boyland v. Wing*, No. 92 Civ. 10002 (DGT), 2001 U.S. Dist. LEXIS 7496, at *14 (E.D.N.Y. Apr. 6, 2001) (internal citations omitted); *Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 148 (E.D.N.Y. 1996). While plaintiffs "are not obliged to make an extensive evidentiary showing in support of their motion," they are required to set forth, at the very least, "sufficient factual information to enable the Court reasonably to permit the action to continue as a class action under Rule 23." *Boyland*, 2001 U.S. Dist. LEXIS 7496, at *14 (internal citations omitted). The Court shall accept the allegations set forth in the complaint as true, *see Sharif by Salahuddin v. New York State Education Department*, 127 F.R.D. 84, 87 (S.D.N.Y. 1989), and examine whether the general requirements of Rule 23 are satisfied without delving into the merits of the action. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968) (remarking that "Rule 23 now emphasizes the flexibility which a trial court exercises in the management of the action … [in focusing] the

attention of the courts on the need to conduct the litigation without undue complication or repetition.")

A. *Rule 23(a) Requirements*

    *1. Numerosity.* Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While plaintiffs need not show the exact size or identity of class members, nor that joinder would be "impossible," courts should examine considerations such as "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

    Defendants have not contested that plaintiffs have satisfied the numerosity requirement in this action. Indeed, plaintiffs have alleged that system-wide defects cripple defendants' implementation of IHO orders and settlements, potentially affecting hundreds, if not thousands, of disabled children. (Declaration of Randee J. Waldman ("Waldman Decl.") ¶ 4 (noting that defendants provided plaintiffs with approximately 2,700 written IHO decisions between July 2002 and September 2004); Declaration of Irene Hwang ("Hwang Decl.") ¶ 5.) Moreover, plaintiffs have adduced evidence of at least fifty examples in which defendants allegedly failed to timely enforce IHO orders. (Decl. of Matthew Lenaghan ("Lenaghan Decl.") ¶¶ 7-34; Waldman Decl. ¶¶ 5, 11.) *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members.") Since the precise number of persons affected is

within defendants' control, plaintiffs may reasonably rely on the "reasonable inferences drawn from the available facts" in establishing the impracticability of joining hundreds of potential claims of class members. *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 552-53 (S.D.N.Y. 1995); *McNeill v. New York City Housing Authority*, 719 F. Supp. 233, 252 (S.D.N.Y. 1989) (remarking that "the lack of knowledge as to the exact number of affected persons is not a bar to maintaining a class action where the defendants alone have access to such data.") Accordingly, the Court concludes that plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

*2. Commonality.* Rule 23(a)(2) requires that plaintiffs assert claims that contain "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In this instance, plaintiffs have identified two distinct common issues of fact: (1) whether defendants have failed to timely enforce IHO orders obtained by plaintiffs; and (2) whether defendants have failed to adopt policies and procedures to ensure that IHO orders are enforced in a timely manner. (Pls.' Mem. in Supp. of Mot. for Class Cert. ("Pls.' Mem.") at 17.) Plaintiffs have also articulated a common issue of law – namely, whether defendants have "systematically denied Plaintiffs their right to an adequate due process system under § 1983 by failing to have in place procedures and policies to implement and enforce IHOs' orders." (Id. at 17-18.)

Plaintiffs' proposed class action effectively challenges defendants' purported practices and policies in failing to timely implement disabled students' IHO orders on a *system-wide* basis. *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (affirming class certification where plaintiffs alleged that defendants violated a complicated scheme of constitutional, regulatory and statutory provisions designed to

provide child welfare services by failing to operate and maintain a functioning child welfare system); *D.D. v. New York City Board of Education*, No. 03 Civ. 2489 (DGT), 2004 U.S. Dist. LEXIS 5189, at *26 (E.D.N.Y. March 30, 2004) (certifying class where plaintiffs focused on the defendants' alleged failure to provide services listed on their IEPs in a timely manner in violation of the IDEA, ADA, and 42 U.S.C. §§ 1983 and 1988); *Louis M. by Velma M. v. Ambach*, 113 F.R.D. 133, 136 (N.D.N.Y. 1986) (commonality established where plaintiffs challenged inadequate state appellate review by which disabled students contested their educational placements); *Andre H. by Lula H. v. Ambach*, 104 F.R.D. 606, 611 (S.D.N.Y. 1985) (commonality established where plaintiffs asserted that defendants failed to develop and implement policies and procedures ensuring that disabled children at juvenile centers would be provided free appropriate public education); *Upper Valley Assoc. for Handicapped Citizens v. Mills*, 168 F.R.D. 167, 170 (D. Vt. 1996) (commonality satisfied where plaintiffs challenged defendants' implementation of procedures mandated by the IDEA). Significantly, resolution of such issues of law and fact does not require a determination of the appropriateness of individual IHO orders but simply the procedures for implementation. *See Evans v. Evans*, 818 F. Supp. 1215, 1219 (N.D. Ind. 1993) (commonality satisfied where defendants allegedly engaged in lengthy delays in implementing IEPs).[3]

---

[3] *McClendon v. School District of Philadelphia*, No. 04 Civ. 1250, 2005 U.S. Dist. LEXIS 3497 (E.D. Pa. Mar. 7, 2005), is not to the contrary. In *McClendon*, plaintiffs sought to certify a class of parents, on behalf of their disabled children, who relinquished their due process rights in exchange for IEPs which the defendant school district allegedly knew it could not fulfill. *Id*., 2005 U.S. Dist. LEXIS 3497, at *11. Because the resolution of those issues involved a review of each student's IEP to determine whether the school district had satisfactorily implemented the IEP, the *McClendon* court concluded that any remedy would necessarily arise from each student's *individualized* education plan, rather than from a single remedy designed to effect systematic reform. *Id*., 2005 U.S. Dist. LEXIS 3497, at *12-13.

8

Accordingly, the Court concludes that plaintiffs have established the commonality requirement of Rule 23(a)(2).

*3. Typicality.* Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). While typicality and commonality overlap, see *Louis M.,* 113 F.R.D. at 136, typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. by Forbes*, 126 F.3d at 376 (internal quotations omitted). In other words, the "typicality requirement does not dictate that each named plaintiff claim that he or she has suffered every type of harm alleged by the class." *Ray M. v. New York Board of Education*, 884 F. Supp. 696, 706 (E.D.N.Y. 1995).

Plaintiffs contend, and defendants have not contested, that the named plaintiffs will articulate the same legal argument – namely, "that Defendants' failure to have policies and procedures in place [to implement the IHO orders] resulted in a denial of their rights." (Pls.' Mem. at 20). Since the named plaintiffs "in the aggregate, assert all of the claims asserted on behalf of class members," the Court finds that the typicality requirement is satisfied. *Ray M.*, 884 F. Supp. at 706 (citing *Kenavan v. Empire Blue Cross and Blue Shield*, No. 91 Civ. 2393 (KMW), 1993 U.S. Dist. 4977, at \*4 (S.D.N.Y. Apr. 19, 1993)).

*4. Adequacy. Finally, plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.*

*23(a). This determination rests on two factors: "(1) the adequacy of the representative and (2) the adequacy of his counsel."* Andre H., *104 F.R.D. at 612. Defendants attacked the adequacy of certain class representatives based on their motion to dismiss plaintiffs' claims for lack of standing and mootness. Given the Court's prior ruling denying the motion to dismiss in all respects, the attack on the adequacy of individual class representatives must also fail.* See *Transcript of hearing held on January 6, 2005 at 33-38.*[4]

One issue remains regarding the adequacy of SS as a class representative. SS's son, AR, may be a member of a related class in *Jose P. v. Ambach*, 557 F. Supp. 1230 (D.C.N.Y. 1980). Defendants contend that the doctrine of *res judicata* operates to bar SS's claims, on behalf of AR, because *Jose P*. already addresses her requested relief—namely, the provision of private related service providers in the area of occupational therapy at defendants' expense. (Defs.' Mem. in Opp. to Mot. for Class Certification ("Defs.' Opp. Mem." at 6; Declaration of SS in Supp. of Pls.' Mot. for a Temporary

---

[4] In their motion to dismiss, defendants contended that LV, ADJ, MG, RZ, ST and MC lacked standing because (1) LV, ADJ, MG and RZ received payments on their behalf by the filing of the first pleading in which each was named (Defs.' Mem. in Supp. of Mot. to Dismiss at 12); and (2) ST and MC failed to demonstrate that any injury they suffered was fairly traceable to defendants' conduct. (*Id*. at 17.) However, the Court concluded that defendants' failure to provide timely due process can itself violate the substantive right to free appropriate public education guaranteed under the IDEA, thereby causing an "injury-in-fact." *Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 80 (D.D.C. 2003) (failure to provide timely due process constitutes *per se* harm to students); *Brandon A., ex rel David A. v. Donahue*, 2001 WL 920063, at *5 (D.N.H. Aug. 8, 2001) (failure to provide timely impartial hearing process and determination within 45 days violated plaintiff's substantive rights under IDEA and conferred standing). Similarly, the Court denied defendants' argument that any claims asserted by VSG, AD, NA, YG, LO, RD, HR, AP and RLB were mooted once they received full payment following the commencement of this action. (Defs.' Mem. in Supp. of Mot. to Dismiss at 13.) The Court concluded that defendants' conduct fell within the "capable of repetition, yet evading review" exception, *see Spencer v. Kemna*, 523 U.S. 1, 17 (1998), such that there exists a "reasonable expectation" that plaintiffs could be subject to the same conduct again based on (1) plaintiffs' continued eligibility for educational services under the IDEA; (2) the nature of their disabilities; and (3) allegations that the delays are due to defendants' systemic failure to ensure timely enforcement. See *Honig v. Doe*, 484 U.S. 305, 319-20 (1988); *Heldman on behalf of T.H. v. Sobol*, 962 F.2d 148, 157 (2d Cir. 1992) (finding that plaintiff's claims under IDEA were not moot even though child was no longer placed in school because "the threat of future denial of an impartial hearing [was] sufficiently real").

Restraining Order ¶ 3.) Plaintiffs respond that the claims asserted in these actions are distinct from one another, such that *res judicata* is inapplicable. (Pls.' Reply Mem. at 4.)

The preclusive effect of *Jose P.* on certain claims asserted now in this action depends on "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Monahan v. New York City Department of Correction*, 214 F.3d 275, 289 (2d Cir. 2000) (internal citations omitted). By definition, the *Jose P.* class includes:

> all handicapped children between the ages of five and twenty-one living in New York City who the Board has notified, pursuant to 8 NYCRR Section 200.5(d), may be handicapped and who have not been evaluated within thirty days or placed within sixty days of such notification.

(Pls.' Reply Mem. in Supp. of Mot. for Class Certification ("Pls.' Reply Mem.") at 5.) *Jose P.* involved three related actions that each alleged, in substance, that defendants had not promptly evaluated or placed disabled students in accordance with their statutory duties. *Jose P.*, 557 F. Supp. at 1232-33. During the course of litigating *Jose P.*, both the defendants and the *Jose P.* court characterized the action as "one to ensure prompt evaluation and placement." *Id.* at 1239-40. Significantly, the *Jose P.* court explicitly excused plaintiffs from exhausting their administrative remedies in determining that it was appropriate to exercise subject matter jurisdiction over the class action. *Id.* at 1236.

Following judgment for the plaintiffs,[5] the parties entered into several post-judgment stipulations regarding the provision of related services, including occupational

---

[5] The parties agreed to almost every term of the judgment, which declared that "defendants had not made available to the plaintiff class a free appropriate public education in a timely manner, thus violating the

11

therapy. (*See* Declaration of Janice L. Birnbaum ("Birnbaum Decl.") and attached exhibits.) However, these stipulations focus on ensuring that students will be provided the services designated by their *IEPs* in a timely fashion without regard to the relief sought here—i.e., the timely provision of services guaranteed by IHO orders through New York's administrative process. (Birnbaum Decl. ¶ 32.) To be sure, the July 28, 1988 Stipulation requires the City defendants to "create a registry of related services providers to be sent to parents of handicapped children who are not receiving related services in order to facilitate the ability of the parent to obtain these services for his or her child at Board expense." (*Id*., Ex. C ¶ 30(h).) Yet nothing in this stipulation indicates that it extends beyond the individual placement process or, more importantly, provides the exclusive remedies regarding any deficiencies in the appellate process by which such placements are to be contested. *See Louis M*., 113 F.R.D. at 138 (certifying class of disabled children challenging the adequacy of New York's appellate process by which they could contest their removal from the public school system and construing *Jose P*. to be limited to the individual placement process). Indeed, informational guides and materials sent by defendants informing parents of their rights clearly indicate that, notwithstanding any relief provided by *Jose P*., "parents have the right to pursue impartial hearings and seek relief without limitation." (Pls.' Reply Mem. at 6; Birnbaum Decl., Ex. A ¶ 22; Declaration of Elisa Hyman ("Hyman Decl."), Ex E.) Accordingly, the Court concludes that SS's claims on behalf of AR are not barred by *res judicata.*

---

requirements of federal and New York law and regulations, and that defendants had the responsibility to make available on a timely basis such a free appropriate public education with appropriate related services in the least restrictive environment for the children in the class." *Jose P*., 557 F. Supp. at 1233.

Based on the foregoing, the Court finds that each of the named plaintiffs[6] is an adequate class representative in seeking system-wide relief regarding the timely enforcement of their IHO orders. Since defendants have not contested the adequacy of plaintiffs' counsel—Advocates for Children of New York, Inc. ("Advocates for Children") and Milbank, Tweed, Hadley and McCloy LLP ("Milbank"). The Court concludes that plaintiffs have satisfied the adequacy component of Rule 23(a)(4).

B. *Rule 23(b).*

Having met the requirements of Rule 23(a), plaintiffs seek to maintain the class under Rule 23(b)(2). Defendants do not contest the applicability of Rule 23(b)(2) which provides that class actions are appropriate where:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed. R. Civ. P. 23(b)(2). In this instance, plaintiffs are challenging defendants' alleged systematic failure to enforce IHO orders in a timely fashion in providing free appropriate public education to class members. The attendant remedy, therefore, is injunctive relief, such that these claims fall within the scope of Rule 23(b)(2). *Andre H.*, 104 F.R.D. at 612; *Louis M.*, 113 F.3d at 137-38; *Marisol A.*, 126 F.3d at 378.

---

[6] Defendants' contention that CW's claim is meritless (Defs. Opp. Mem. at 8) is not sufficient at this stage of the litigation to establish CW's inadequacy as a class representative. *Eisen,* 417 U.S. at 177.

C. *Scope of the Class*

Defendants nevertheless contend that plaintiffs' proposed class definition is overly broad and vague. (Defs.' Opp. Mem. at 10-12.) Specifically, defendants argue that the class should be limited to exclude claims by plaintiffs whose IHO orders were not implemented due to their own inaction or who were otherwise not injured by lack of implementation. (Id.) To a certain extent, this argument is a reiteration of defendants' motion to dismiss for lack of standing. As noted above, a failure to timely implement IHO orders may itself establish injury justifying injunctive relief. *Blackman*, 277 F.Supp.2d at 80. To the extent that defendants are simply arguing that they cannot be liable to class members for a parent's own inaction, this bespeaks the obvious. Moreover, plaintiffs' proposed class definition does not cast so broad a net as to include any such claim. By its terms, the class only includes those who may be denied "timely implementation." The Court is satisfied that this unambiguously refers only to failure by the Department of Education to undertake its obligations to implement IHOs.

Defendants also seek to exclude from the class all persons who are also members of the class certified in *Jose P*. *See* Def. Opp. Mem. at 11. Certainly, at the most abstract level, the classes in *Jose P*. and *LV* are similar to the extent that each seeks to ensure the timely provision of free appropriate public education to disabled students. However, both the IDEA and New York's statutory regime make clear that disabled children are entitled to a multi-tiered system of evaluation, placement and review in protecting their rights to free appropriate public education. Indeed, Congress saw fit to require states to provide expansive due process mechanisms allowing parents to contest inadequate IEPs in an adversarial setting. *See Murphy*, 297 F.3d at 197. To force plaintiffs to rely solely on

remedies fashioned with an eye towards improving the *initial* placement process would be tantamount to eroding the due process mechanisms afforded to parents in the *appellate* process. That certain plaintiffs may be entitled to the timely implementation of their IEPs under *Jose P.* does not mean, *ipso facto*, that they are precluded from demanding the timely implementation of their IHO orders. In light of the prior decisions and stipulations in *Jose P.*, the Court therefore concludes that the "thrust" of the two actions are quite distinct from each other, in that *Jose P.* addresses the initial placement process while this case addresses the first tier of administrative review. *Louis M.*, 113 F.R.D. at 138; *see also Evans*, 238 F. Supp. at 218 (certifying class where plaintiffs sought to enjoin the defendant district's policy of authorizing nonsurgical procedures on them without medical consent despite prior certified class which sought to shut down a particular mental institution and effect broad reform in the district's care of the mentally retarded).

## CONCLUSION

The Court grants plaintiffs' renewed motion [60] for class certification pursuant to Rule 23(a) and Rule 23(b)(2) and hereby certifies the class as follows:

> all persons (1) who have obtained, or will in the future obtain, for the benefit of a child with disability, a favorable order by an IHO against, or stipulation of settlement placed on the record at an impartial due process hearing with, the New York City Department of Education, or who are children with disabilities who are the beneficiaries of such order or stipulation of settlement, and (2) who fail to obtain, or are at risk of failing to obtain, full and timely implementation of such order or settlement.

The Court further appoints Advocates for Children and Milbank as class counsel pursuant to Rule 23(g)(1)(A).

SO ORDERED

Dated: New York, New York
    September 15, 2005

_____
Richard J. Holwell
United States District Judge