UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LV, RC, AD, NA, ADJ, YG, LO, AP, RLB, RD,
and JYW, individually; and VSG, HR, CW, SS,
MG, MS, ST, RZ, MC and JP, on behalf of
themselves and all others similarly situated,

               Plaintiffs,

      -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; NEW YORK CITY BOARD OF
EDUCATION; JOEL KLEIN, in his individual and
official capacity as Chancellor of the New York
City School District,

               Defendants.

No. 03 Civ. 9917 (RJH)

**AFFIDAVIT OF STACEY REEVES IN OPPOSITION TO PLAINTIFFS' MOTION FOR APPOINTMENT OF A SPECIAL MASTER AND OTHER RELIEF**

STATE OF NEW YORK    )

COUNTY OF KINGS    )

      **STACEY REEVES**, being duly sworn, deposes and says:

    1.    I am the Chief Administrator of the Impartial Hearing Office for the New York City Department of Education ("DOE"). I am familiar with the facts set forth herein and submit this affidavit in opposition to plaintiffs' motion for an order appointing a special master to oversee the implementation of impartial hearing orders and other relief.

    2.    The Impartial Hearing Office oversees the impartial hearing process. The Impartial Hearing Office uses two tracking systems. The first, the Impartial Hearing System ("IHS"), tracks impartial hearings from the initial request through the issuance of orders or the withdrawal of the impartial hearing request. The second system is known as the Decision Action Item Tracking System ("DAITS").

1

3.      When an order is issued following an impartial hearing, the order is transmitted from the IHS into DAITS, together with pertinent information about the case. Action items corresponding to the various obligations in the orders are created and assigned for implementation. DAITS is then used as a tracking system for implementation, a repository of documents showing implementation, as well as a conduit to the DOE's payment system, known as FAMIS.

4.      The interpretations developed by the Independent Auditor in this case, Navigant Consulting, formerly known as Daylight Forensics & Advisory (hereinafter "Navigant"), with respect to payment orders and action items have resulted in a labor intensive approach that creates and imposes artificial and meaningless obligations on DOE that Navigant considers necessary for the DOE to demonstrate its timely implementation of payment action items. The court should reject the analysis used by Navigant for the reasons described below. Additionally, the court should defer to the DOE, as the agency charged with implementing the decisions, in its assessment of the steps needed to implement these orders.

**Payment processing**

5.      All payments in connection with impartial hearing orders are made through the City's FMS system, maintained by the New York City Comptroller (the "Comptroller"). FMS can only generate payments to vendors or parents who have been approved by the Comptroller. In order to be included as a vendor or payee in FMS, the payee must submit to the DOE either a taxpayer identification number ("TIN") or, for individuals, a social security number.

6.      When the DOE receives a TIN or a social security number, it is submitted to the Comptroller's office for processing. The Comptroller's office verifies the number and, upon approval, enters the payee into its FMS payment system.

2

7.     When a payee is approved by the Comptroller, the DOE then is able to enter other information into its databases, such as the amount to be paid, or the reimbursement rate, that support the payment.

8.     The Comptroller also requires certain documentation be on file at the DOE before a payment can be made.  For example, where an order requires the DOE to reimburse the parent for payments the parent has made,[1] the DOE must have documentation of proof of payment, such as a cancelled check, or an official receipt from a school.  Where an order or action item requires payment directly to a school for tuition on a going forward basis, the DOE must have a contract that confirms the student's enrollment and the amount that must be paid to the school.   Where payments are to be made to a vendor for the provision of services, payments are made only upon submission of invoices.[2]

9.     As part of the development of DAITS in response to this lawsuit, DOE linked its impartial hearing tracking system with its payment system. The prior tracking system gathered all the information that was required for payment. Once the DOE had all the information that would support a payment, it previously entered the information into an earlier version of DAITS and also had to separately data enter this information into FAMIS, the DOE's payment system, resulting in a duplication of effort. Currently, DAITS allows information to be automatically transferred from DAITS into FAMIS, which facilitates quicker payments upon submission of

---

[1]     When an order or action item directs the DOE to reimburse the parent for payments that the parent has made (or will make) for a service or for tuition at a private school, the order is referred to as a "reimbursement order" or a "reimbursement action item."

[2]     When the order contemplates that the DOE will make a payment for the parent to receive services or attend a particular school, this is referred to as a "prospective payment order."  In these orders, the DOE pays for the service, usually directly to the vendor, upon submission of an invoice showing that the service has been provided or presentation of an enrollment contract showing that the student is enrolled in school. With such an order, the parent is eligible to obtain the ordered service at DOE expense without first paying out funds.

invoices or other required documentation. When invoices are received, payments can be generated.

10.    The DOE establishes the cases for payment by creating what is known as an "assessment" in DAITS. This includes relevant payment information including as necessary the the names of the payee or vendor, rate of payment, number of sessions or amount due. For reimbursement cases, when the DOE has all information necessary for a payment to a parent who is in the City's FMS system[3] staff in the Impartial Hearing Office enter information into DAITS. This information is transferred to the DOE's payment system, creating a "voucher" for payment. The voucher is transmitted electronically to the City's FMS system and payment is generated by the Comptroller's office. Reimbursements may be made in parts; that is, the DOE can only reimburse for actual payments made. If a parent makes payment over time, such as paying for each semester of school separately, the DOE's reimbursement would likewise be adjusted. For prospective payment cases, when an invoice or contract is submitted, a voucher for payment is created by the DOE and automatically transmitted to FMS for payment by the City.

11.    The DOE provided Navigant a walk through of this process, as part of Navigant's initial work in understanding the DOE's systems. As part of this walk through, Navigant verified that, in fact, payments were issued by the Comptroller in response to the DOE's data entry and vouchering process and that processes were in place to address "error" messages. It is my understanding that based on these walk throughs, Navigant determined that there was sufficient assurance of a payment once the DOE had completed the voucher and data entry process.

---

[3]    As part of efforts to streamline the process for implementation, the DOE consulted with the Comptroller's office and was able to reach agreement reducing the documents needed by the DOE to support payment. For example, DOE no longer requires parents to submit attendance documentation before the DOE can issue a reimbursement payment.

**Implementation of Payment Orders**

12.     The Stipulation in this case assesses whether the DOE has implemented an action item within a designated time frame, usually 35 days, but sometimes shorter if the Order specifies.  Navigant analyzes whether the DOE has created a voucher for payment.  If payment is not vouchered within the required time period, the action item will be "Uncounted" if implementation requires action by the parent, but "the DOE has made a substantial showing of attempts to reach the parent and attempts to obtain compliance with the parent's obligations under the Order. "  (Stipulation at ¶ 1 (ll)(ii)).  Navigant has determined that this provision requires DOE to make at least three outreach attempts by two separate and distinct means. Additionally, an action item is considered "Timely Implemented," even if payment has not been made, if "the DOE has demonstrated that it has taken all steps necessary to implement the Order or Action Item, but could not Timely Implement [it] because implementation was dependent upon further steps that, in the determination of the Independent Auditor, could not be completed because of the action or inaction of a third party."  Stipulation at ¶ 1 (ii)(ii).  Navigant's approach in construing these provisions has been arbitrary and has resulted in "make work" that does not further efforts to make payments where required.  The practices used by the Impartial Hearing office more than satisfy the obligations of the Stipulation.

13.     When a parent/advocate requests an impartial hearing, the IHO sends to the parent an information sheet that describes the hearing process as well as documents that should be brought to the hearing, particularly if the parent is requesting that the DOE make payment as part of the requested relief.   A copy of this information sheet is annexed as Exhibit __.

14.     When an order is issued after an impartial hearing, the IHO transmits the order to the parent and the parent's advocate/attorney. This is the first official communication to the

parent or advocate advising the parent and advocate of the outcome of the impartial hearing, and providing contact information at the IHO.

15.     All orders are sent to the parties with a cover sheet entitled "Transmittal of the Decision Order." A copy of the Transmittal Sheet is annexed as Exhibit ___. The cover sheet and the attachments inform the parent of the documentation that is required by the New York City Comptroller to support the required payment, as well as additional instruction/forms needed to process payment. If these documents were not submitted during the hearing, they must be submitted to the Impartial Hearing Office before payment can be processed.

16.     If the parent/advocate still does not submit the needed documentation, the DOE engaged in further outreach. In addition to the cover sheet that is included with all payment orders, the IHO sends a form letter to the parent, with a copy to the advocate, on which the DOE indicates the types of documents or information that are missing, such as the tuition or service contract, proof of payment, name of vendor and hourly rate or completed W-9 form. This form letter was modified during the course of this litigation in response to concerns raised by Navigant about an earlier version. A copy of the form "2nd Letter" is attached as Exhibit ___.

17.     The use of a form letter is critical. The IHO processes hundreds of action items for payment over the course of a reporting period, making the use of individualized letters costly and time-consuming. The form letter, in contrast, permits DOE to efficiently and effectively identify for the parent/advocate the required documentation, saving time and money, without sacrificing content or clarity.

18.     The form letter is sent by mail to the address that the parent has provided as part of his/her impartial hearing request, which is recorded in the IHS. If the parent changes his/her address, this information must be provided to the Impartial Hearing Office so that IHS can be

updated. A copy of the completed form letter is automatically maintained in DAITS. In addition, if the IHS reflects that the parent has an advocate, the letter also is sent, usually by email, to the advocate. However, Navigant rejected this outreach as insufficient,[4] because the advocate may simply have received a "cc" of the letter. Accordingly, simply to satisfy Navigant, the IHO now separately sends a copy of this email to the parent's advocate, making sure that the advocate is identified in the "to" line of an email, rather than the "cc" line,

19.     It was DOE's practice to send an email to the advocate, attaching a PDF copy of the letter that was sent to the parent. To allow Navigant to verify that an email was sent, a copy of this email is uploaded and stored in DAITS.

20.     Navigant would not accept these emails as proof of additional outreach, because it could not open and view the PDF of the letters that were attached to the emails that were scanned into the DAITS system. In response, IHO staff now copy the body of the letter into the text of the email simply so that Navigant can verify that the letter was sent. Thus, even though the text of the letter indicates that it is being copied to the advocate, the IHO must perform additional steps to satisfy Navigant – send a completely separate email and copy the text of the email into the body of the email.

21.     If the IHO still does not receive supporting documentation from the parent or advocate within a period of time that would enable action to be completed within the required timeframe (generally 35 days from the order, but sometimes shorter), IHO engages in additional

---

[4]     Navigant took the position that an email to multiple parties only counts as one outreach (See Memorandum dated March 11, 2009, annexed hereto as Exhibit ___). Navigant opined that "it is the repeated nature of the attempt to one recipient that satisfies 'Substantial Attempts' to reach that individual. A single transmission of an email or copies of the same letter sent to multiple recipients does not satisfy Substantial Attempts." In direct response to a question by the DOE about copies of letters to advocates, a second memorandum from Navigant confirmed their position that "a single transmission of an email or copies of the same letter sent to multiple recipients does not satisfy substantial attempts." (See Memorandum dated [date], annexed hereto as Exhibit ___.

communications to contact the responsible parties. The staff of the IHO regularly call and send emails to advocates and parents. If this does not result in receipt of the documents, the practice of the Impartial Hearing Office, developed solely to satisfy Navigant's requirements, is to send another letter, known as the "3rd Letter." A sample of this letter is attached as Exhibit __. This communication constitutes the third time that an official letter is sent to the parent, following the information sheet sent with the decision and the prior outreach letter. Copies of each of these letters are also sent to the advocate. In addition, emails and telephone calls would also have been made.

22.     Thus, if the parent is represented by an advocate, which is the case in approximately 80 percent of payment cases, a total of 6 letters would have been sent plus any additional telephone calls and informal emails, within a period of just over one month.

## Additional Outreach for Prospective Payment Orders

23.     The following information is required by the Comptroller for the DOE to process a prospective payment: the name of the vendor, a taxpayer Identification number ("TIN") that has been authorized by the Comptroller, and the amount that will be paid to the vendor for the service. With this information, the DOE can create an "assessment" in its payment system, which then permits invoices to be processed and paid upon receipt.

24.     When the IHO receives the necessary paperwork that permits an assessment to be created, IHO implementation staff enter the necessary information in the DAITS system. Thereafter, the only remaining step needed to generate a payment is the receipt of invoices from the vendor. The DOE asserted that a prospective payment action item should therefore be considered timely implemented once DOE created an assessment because, at that time DOE has done everything it could with actual payment being wholly dependent on the actions of a third

8

party – i.e., the submission of an invoice by the vendor. In the course of monitoring, Navigant determined that this practice was insufficient and found that the action item was not timely implemented if either payment of an invoice was not done before the implementation deadline or additional outreach was not made.[5]

25.    Although the DOE disagrees with this interpretation of the Stipulation, the DOE made further adjustments to our procedures to cause yet more communications to be made to the parent/advocate after the assessment was created.

26.    For example, beginning in 2009, as part of the corrective action taken in this case, DAITS automatically generates an email to each vendor identifying the subject order, attaching a form invoice and explaining where the invoice should be submitted. Separate letters are generated and sent to the parent and advocate/attorney explaining that the order is in place, that the child should be taken to the vendor to receive the ordered services and that the vendor has been advised as to where to submit invoices.

27.    Navigant initially rejected the addition of the automated emails because, in its perspective, there was not substantial assurance that the vendor had actually received the email,

---

[5]     In a memorandum dated December 23, 2008 (annexed hereto as Exhibit ___), Daylight stated:

> In DFA's determination, actual outreach to a third party, i.e., a provider with whom the DOE does not have a contract, could permit them to claim inaction of a third party. In addition, the Stipulation requires the DOE to demonstrate to the Independent Auditor that it has taken 'all steps necessary' to implement the Order or Action Item. When DFA determines that inaction of a third party provider is the reason for DOE non-performance, DFA will deem an Order or Action Item Timely Implemented where there is at least one documented outreach attempt to the third party provider that specifically references the provision of invoices as required to process payments. Such attempt shall be considered one of the three attempts by two means necessary to satisfy DFA's 'Substantial Attempts' test." Where the DOE has met DFA's 'Substantial Attempts' test with outreach only to the parent or the parent's attorney and no direct outreach to the provider, we will continue to assess these Action Items as Uncounted.

even though the emails were sent to the email addresses provided by the vendor. Navigant made this assertion even though the DOE demonstrated that for the four month period from July through November, 2009, only 2 emails out of 284 sent were not received by the vendor. In response, DOE augmented the system to include a notification if an automated email delivery failed. In the email delivery fails, the IHO resends the notification by regular mail.

28.     Nonetheless, Navigant has determined that these outreach efforts are insufficient for DOE to demonstrate its compliance with its obligations.[6] Rather, Navigant has specifically stated that these communications are insufficient, because they occur on the same day:

> There is a value associated with repeated attempts occurring at some meaningful temporal interval and the repeated quality of the attempts is diminished when they occur too close together in time. In this case, all of the outreach attempts were made on the same day, and therefore, do not satisfy "Substantial Attempts."

See Daylight Memorandum dated xxx. (see Exhibit _____)

29.     This interpretation fails to account for the purpose of the various communications, which is to try to ensure that parents are informed that DOE has taken the steps necessary for the student to receive services/schooling at DOE's expense, and that such services/schooling is now available.

30.     Contrary to Navigant's view, it is entirely reasonable for DOE to send all three communications on the same day. First, the notices are sent to three separate sources. Second, it is appropriate for DOE to inform the vendor and the parent at the same time that services can be provided to the particular student, with assurance that the DOE will pay the invoices to the

---

[6]       Given the timing of the reports issued by Navigant, the DOE was not finally apprised that this modification was insufficient until after the end of the post-corrective action First Benchmark period.

vendor. Otherwise, a parent could conceivably go to a vendor and request services as per the order without the vendor having been assured that it would be paid for the provision of services. [7]

31.     Furthermore, it is apparent that DOE's system is working. As part of its comments to Navigant, the DOE included a chart showing action items during the first corrective action benchmark period where these three communications were sent, showing when an assessment was created and then the date when the DOE had created a voucher for payment to the vendor, which was dependent upon actual submission of invoices. See Exhibits W and X annexed to the Declaration of Rachel Penski dated November 5, 2010, submitted by plaintiffs. These charts clearly demonstrate that the DOE has designed a system that enables parents to obtain services from vendors and that vendors have been advised of the manner in which to submit invoices. In each of these cases, the DOE created the assessment before the deadline for implementation and sent communications to the parent, advocate and vendor. The vendors have submitted invoices for payment and these invoices have been vouchered and paid.

32.     At counsel's request, Navigant recalculated DOE's timely implementation rate assuming that DOE's outreach interpretations were adopted and an action items would be deemed Timely Implemented in those instances where the DOE conducted these three outreaches on the same day.

33.     According to Navigant, an additional 47 payment action items and 38 payment orders would have been found Timely Implemented, resulting in DOE's timely implementation during first benchmark increases of 76.6% of Payment Orders and 74.9% of Payment Action Items. (The overall percentage of Timely Implementation during the first benchmark increases

---

[7]     Thus, while DOE could re-program the system to delay the sending of the email to the vendor to satisfy Navigant's interpretation, that would not be good business practice, as a parent and student could seek to obtain services from a vendor before a vendor had information that assured it that the DOE would make payments upon submission of invoices.

to 72.3% of all Orders and 79.4% of all Action Items.)  (See email dated August 18, 2010 from Navigant, attached as Exhibit ___ ). Thus, this simple adjustment to consideration of the DOE's outreach efforts results in a finding that DOE achieved the first benchmark under the Stipulation with respect to Payment Orders and Payment Action Items.

## Daylight's Interpretations Have Created Unnecessary, Arduous and Burdensome Work

34.    In addition to its erroneous approach to prospective payment orders, Navigant's approach to implementation of payment orders in general has resulted in unnecessary, arduous and burdensome work that does not further efforts to make payments where required. As discussed above, DOE was advised that Navigant would not count as outreach a copy to the advocate of a communication to the parent.  Navigant also rejected outreach to an advocate where the advocate was included in the "to" line of an email to multiple parties. As a result, DOE was compelled to use limited staff resources to send a separate email to the advocate to include the copy of the letter that was sent to the parent. Even then, as described above, Navigant also rejected this practice because it complained that it could not view the actual letter that was attached to the email as a PDF. Thus, staff resources are now devoted to actually copying the body of the letter into the text of the email to the parent, simply so Navigant can see the contents of the letter.   These additional steps do not further the goal of implementation, and waste valuable time and resources.

35.    As discussed above, the DOE also developed and modified a form letter to send to parents when additional information is needed to implement an action item. The use of a form letter provides the parent/advocate with all the necessary information, by indicating, though check boxes, the type of documents that are needed to complete payment in a specific case. The parent/advocate can refer to the order for additional information. Remarkably, however,

12

Navigant has rejected outreach letters that do not specifically identify a service. See, e.g., Order 124643 (where Order required payment for a number of different services, DOE requested from the parent information about the vendor; Navigant rejected the outreach as insufficient); Order 116908 (outreach that asked for invoices was rejected); 122394 (same); Order 124597 (same), Order 123774 (outreach that requested proof of payment of tuition was rejected as insufficient)

36.    The DOE's efforts to respond to Navigant's requirements is also hampered by Navigant's changing interpretations over time. For example, in April 2010, after almost two years of reviewing outreach efforts, Navigant suddenly determined that outreach to a parent must be in the language that the DOE has on record as the parent's native language. Navigant adopted this position without regard for whether parents had actually submitted their request for an impartial hearing in English, requested that the impartial hearing be conducted in a language other than English, participated in the hearing in English, or had an advocate. Thus, going forward with the third quarter post corrective action report, Navigant is adding an additional condition, without any basis for doing so.

37.    Navigant also incorrectly concluded that no outreach is required because evidence was submitted at the hearing or all required documentation was submitted before the implementation deadline. While the evidence may be available by the time that Navigant undertakes its monitoring review months after the impartial hearing decision, the DOE may not actually have had access to the documents at the time of implementation, particularly where the order is a pendency order. In such cases, Navigant's analysis that outreach was not needed is wrong.

38.    The DOE is required to issue impartial hearing decisions once they are submitted by the Impartial Hearing officer. DOE cannot delay issuing a decision even if the Hearing

13

Officer has not submitted the official copy of the exhibits to the DOE. Hearing Officers typically do not submit their package of evidence until a case is fully completed, and even then, staff in the IHO frequently must follow up with the Hearing Officer to obtain the exhibits. Navigant is either relying on the exhibit list or a review of evidence submitted after the conclusion of the case. However, an exhibit list is not sufficient to support payment. For example, the exhibit list may indicate that the parent submitted a check, and the Impartial Hearing officer directs the DOE to reimburse. Absent the physical copy of the check, however, DOE cannot confirm that the parent provided the front and back of the check, which is needed for audit purposes. In such a case, the IHO staff would do outreach to the parent for a copy of the check. Purely for purposes of satisfying Navigant, DOE has developed a checklist that identifies what documents are available to the IHO at the time the decision must be implemented.

      39.    In other cases, Navigant's assessment that DOE was able to make a payment before the implementation deadline is incorrect. In particular, as discussed above, in order to make a payment, the payee must be in the City's payment system, controlled by the New York City Comptroller's Office. When the vendor/parent is identified, the Impartial Hearing Office staff first check to determine whether the payee is in the City's payment system. If the payee is in the system, then payment can proceed. If not, then a W-9 or social security number form must be submitted to the Comptroller's Office to be vetted. Although the Impartial Hearing Office provides parents with the social security number form as part of the information packet when a hearing is requested, many parents do not complete the form at that time. When the form is finally received, the forms are sent to the Comptroller's Office for approval. Thus, contrary to Navigant's conclusion, the DOE cannot simply authorize a payment when it receives the forms. (See, e.g., Order 123274, where Navigant erroneously concluded that the DOE had required

documentation before the implementation deadline because it had the parent's social security number.)

**Conclusion**

40.　Navigant's analysis of payment orders has largely been a fine tooth comb assessment about outreach attempts, imposing hyper-technical requirements. In two thirds of the payment action items where the DOE was found not to have timely implemented the action item during the first benchmark period, the sole issue was a perceived flaw in the outreach required by Navigant. In fact, the DOE is making regular payments with respect to payment action items. There were 322 prospective payment action items issued during the period between September 2009 and February 2010. Payments have been made with respect to each of these action items. In 114 of these action items, the DOE has paid up to the maximum amount authorized under the action items. In the remaining cases, the student is still eligible to receive some services and additional invoices will be paid. A copy of the report showing payment of these action items is attached hereto as Exhibit ＿＿.

41.　Of the 387 "reimbursement action items" where implementation was required between the period September 2009 and February 2010, 382 have been paid in full. Of the remaining 4, a partial payment has been based on the proof submitted by the parent/advocate of the amount that was paid out. A copy of the report showing payment of these action items is attached hereto as Exhibit ＿＿.

42.　Based on the foregoing, it is clear that Navigant's interpretation of the Stipulation and the resulting imposition of additional obligations on DOE to demonstrate Timely Implementation, are unreasonable and should be rejected.

43.     As noted above, acceptance of DOE's position with respect to the performance of outreach on the same day would result in a finding that DOE met the first benchmark with respect to Payment Orders and Payment Action Items.

Accordingly, plaintiffs' motion for relief in this case should be denied.

STACEY REEVES

Sworn to before me this
24th day of January, 2011

Notary Public

JOHN J. CAMINITI
Notary Public, State of New York
No. 02CAS013207
Qualified in Kings County
Commission Expires July 15, 2011

17