

New York | Washington | Miami | London
daylightforensic.com

Privileged & Confidential

## Memorandum

To: New York City Department of Education / Advocates for Children

From: Daylight Forensic & Advisory LLC

Date: July 13, 2009

Re: L.V. v. D.O.E. – Response to the DOE's E-mail dated July 6, 2009

---

On July 6, 2009, the New York City Department of Education ("DOE") sent an e-mail to Daylight Forensic & Advisory, LLC ("Daylight") and Advocates for Children ("AFC") regarding Daylight's Second Quarterly and First Benchmark reports and requested clarification on certain items. This memorandum provides further explanation of our protocols used to analyze Orders and Action Items relating to the issues raised in the DOE's email as well as comments provided by both Parties on March 27, 2009.

I. Responses to Specific Questions Posed by the DOE

A. Question 1

"On page 15 of your Second Quarter report, you provide your analysis concerning Parent appeals. We want to make sure that we fully understand Daylight's position, so that we can advise DOE staff accordingly

1. Parent files a notice of intention to seek review and does not articulate which specific action items will be appealed; DOE reinstates pendency, if any. Daylight's position is that it will not assess whether action items in the order have been timely implemented. Daylight will not assess whether pendency is reinstated.

2. Parent files a notice of intention to seek review in a case where DOE agreed to specific relief at the impartial hearing - With respect to the items that were specifically agreed to at the hearing, Daylight's position is that it will assess for timely implementation. Daylight will not assess whether any remaining action items have been timely implemented.

Is this an accurate characterization?"

<u>Daylight's Response:</u> Yes, this is an accurate characterization of Daylight's analysis regarding parent appeals.



New York | Washington | Miami | London
daylightforensic.com

Privileged & Confidential

B.    Question 2

"Where the parent files a notice of petition that specifically identifies the parts of the order being appealed, for appealed action items, the report states that Daylight will not assess for timely implementation. You then state that "The remaining un-appealed Action Items are assessed as counted or uncounted and are analyzed for timely implementation." This sentence is not clear to us in light of your prior discussion concerning the Notice of Intention to seek review."

<u>Daylight's Response:</u> Oftentimes, the Notice With Petition is not uploaded in DAITS. In instances where only the Notice of Intention to Seek Review is uploaded, Daylight is unable to determine the Action Items being appealed. Therefore, aside from those Action Items for which implementation was explicitly agreed upon at the hearing, the remaining Action Items are not analyzed.

C.    Question 3

"All parents are required to serve a Notice of Intention to seek review before serving the petition. If, in accordance with process for dealing with the Notice of Intention to seek review, DOE has ceased implementation of a particular action item, what happens if the Notice of Petition does not actually appeal that action item?"

<u>Daylight's Response:</u> Assuming a Notice With Petition is uploaded in DAITS, Daylight will analyze all Action Items not appealed in the Notice With Petition for Timely Implementation. As the parent is required to file the Notice With Petition within 35 days, Daylight suggests requiring all implementation liaisons to upload both the parents' Notice of Intention to Seek Review and the Notice With Petition.

D.    Question 4

"…For example, we see that Daylight rejected the DOE's position that letters to parents that are copied to the attorney/advocate should count as 2 outreaches; we do not know if this is because Daylight concludes that a copy of a letter sent to a second person is insufficient or that an outreach to the advocate in and of itself is insufficient."

<u>Daylight's Response:</u> Daylight continues to maintain the position that outreach attempts to an attorney or advocate are sufficient towards meeting our "Substantial Attempts" test. In addition, as stated in our March 11, 2009 memorandum, "Daylight continues to take the position that letters or e-mails copied to multiple parties constitutes only one outreach attempt…A single transmission of an e-mail or copies of the same letter sent to multiple recipients does not satisfy substantial attempts."



New York | Washington | Miami | London
daylightforensic.com

Privileged & Confidential

II.  Parties' March 27, 2009 Comments to the Draft Second Quarterly Report

DOE's email dated July 6, 2009 stated:

> "In addition, DOE (and plaintiffs' counsel) submitted extensive comments and arguments to Daylight in response to the second quarter/first benchmark drafts. Other than the analysis with respect to parent appeals and substantive and procedural validity of an IEP, Daylight did not formally respond to the arguments made by either party. Although we can see from our review of individual action items that Daylight rejected many of the positions of the DOE, we do not know the reasoning behind your decision."

The sections below indicate the topics discussed relative to the Parties' comments to the draft Second Quarterly Report that were not discussed separately above, and Daylight's articulation of its methodology or references to Daylight reports or other documentation provided to the Parties in which our analyses have previously been set forth.

   A.  Comments from DOE's "Response to Quarter 2 and First Benchmark Report" dated March 27, 2009

      1.  What Constitutes an Action Item

         The DOE commented that Daylight identified single action items more appropriately characterized as multiple action items and that Daylight's interpretation is too literal.

         <u>Daylight's Response:</u> Daylight defers to the definition in the Stipulation and Agreement of Settlement, Section I.1.b.:

         > "'Action Item' means a specific identifiable action in an Order that, as determined by the Independent Auditor, requires implementation by the DOE. In determining the Action Items in an Order, the Independent Auditor will take into account, but will not be bound by, DAITS or any successor computer system."

         While Daylight's determination of Action Items are very often consistent with those entered into DAITS, there are some instances in which Daylight identifies multiple action items where DOE identifies one and vice versa.



New York | Washington | Miami | London
daylightforensic.com

Privileged & Confidential

When an Order requires the DOE to implement an Action Item consisting of multiple steps (i.e. conduct evaluations and issue a new IEP based on the evaluations), Daylight's protocol is to analyze these steps as separate Action Items. In addition, Daylight's protocol takes into account situations where the implementation of one Action Item eliminates the need for the DOE to implement another Action Item (i.e. Nickerson letter vs. placement). Daylight only assesses one of the Action Items for Timely Implementation and the other is retained in our system for reconciliation purposes but is not analyzed.

2. Substantial Outreach

The DOE commented that once they have communicated with an advocate or an attorney, the three attempts by two means standard should no longer apply.

<u>Daylight's Response:</u> Daylight maintains that while outreach attempts made to an attorney or advocate are counted towards meeting our "Substantial Attempts" test, the DOE is still required to meet the three attempts by two means standard.

Daylight's methodology regarding outreach requirements was articulated to the Parties in several previous discussions and in written documentation provided to the Parties. More specifically, after receiving position papers from both Parties on December 15, 2008, Daylight provided a response memorandum dated December 23, 2008 explaining our approach. Further, Section III.D.4.d.i.-ii. of Daylight's First Quarterly Report dated January 9, 2009 describes our methodology relating to a substantial showing of attempts to reach parents. In addition, after meeting with the Parties in person on February, 19, 2009, Daylight further clarified its position and approach in a memorandum dated March 11, 2009.

3. Prospective Payment Orders

The DOE contends that a prospective payment Action Item should be considered uncounted (or Timely Implemented) once a prospective payment order has been set up in DAITS, regardless of the number of outreach attempts that were made.



New York | Washington | Miami | London
daylightforensic.com

<u>Daylight's Response:</u> Daylight's methodology regarding prospective payment orders was articulated to the Parties in previous discussions and in written documentation provided to the Parties. After receiving position papers from both Parties on December 15, 2008, Daylight provided a response memorandum dated December 23, 2008 explaining our approach to the analysis of prospective payments. Further, Section III.D.4.e. of Daylight's First Quarterly Report restated our methodology. In addition, Daylight reiterated its position and approach regarding prospective payments in a memorandum dated February 11, 2009 as follows:

> "Daylight's position relating to Prospective Payments is that an Action Item would be considered Uncounted when the DOE provides evidence that "Substantial Attempts" (3 attempts by at least 2 different means) had been made to obtain documentation from the parent or the parent's attorney prior to the final due date. Additionally, where a Prospective Payment order has been generated, but a voucher has not yet posted at all or was posted after the final due date, the related Action Item is assessed as Timely Implemented only when DOE meets the "Substantial Attempts" test with at least one of the three required outreach attempts made directly to the provider."

4.   Related Service Authorizations

   a.   Date on Which sent to Parent

   The DOE commented that undated RSAs that were uploaded into DAITS prior to the final due date should be considered Timely Implemented.

   <u>Daylight's Response:</u> Undated RSAs uploaded in DAITS before the final due date are accepted as evidence of Timely Implementation if the RSA either specifically references the Order number and hearing date (to show that it was issued in response to the impartial hearing) or explicitly states that it is to be used to obtain services for the entire school year or time period specified in the Order.

   b.   Language of RSA

   In addition, the DOE argued that an RSA does not need to match the specific requirements set forth in the Order.



New York | Washington | Miami | London
daylightforensic.com

Privileged & Confidential

<u>Daylight's Response:</u> If the Order mandates a therapy or service in a group setting indicating, among other things, group size (as opposed to an individual setting), Daylight will review the RSA for the requirements specifically referenced by the hearing officer. Where the RSA does not provide the service as specifically instructed by the hearing officer, Daylight will check to see whether there is documentation on record indicating that the parent agreed to any changes to the frequency, duration, or student-to-provider ratio.

5. State Approved Non-Public Schools

   a. Payment Obligations

   The DOE commented that Action Items requiring placement in a state-approved non-public school should be treated differently than reimbursements for non-approved private schools.

   <u>Daylight's Response:</u> Daylight characterizes these Action Items consistently with the DOE's treatment of payment obligations related to children placed in state approved non-public schools. Daylight's protocol is to treat these Action Items as placement Action Items, when applicable. In making our determination as to whether these Action Items are Timely Implemented, Daylight searches for the Contract Aid Financial System (CAFS) screenshot indicating monthly payments as documentation supporting the child's attendance at the school.

   b. Related Services in State approved non-public schools

   The DOE also contends that they do not bear the responsibility of providing related services when a student is placed in a state approved non-public residential school.

   <u>Daylight's Response:</u> Daylight's analysis anticipates that the provision of related services to a student with a disability in the non-public school setting is the responsibility of the DOE. Daylight's analysis of whether the student is receiving the related services in a timely manner is therefore based upon documentation uploaded in DAITS, such as letters from the school administrators or school attendance records indicating the child's receipt of the required services. Evidence of placement in a school where relevant services are provided is not enough, in and of itself, for Daylight to determine that a child is actually receiving the ordered services.



New York | Washington | Miami | London
daylightforensic.com

Privileged & Confidential

6. Implementation of Action Items over the summer

The DOE comments that Action Items requiring related services during the summer for a 10 month student should not be analyzed using the 35 day deadline.

<u>Daylight's Response:</u> Daylight reviews Action Items involving summer services on a case by case basis. In instances where services were intended to be provided during the summer, Daylight uses a due date of 35 days from the start of the summer session (or within the specific time period ordered).

Where compensatory services are ordered to commence during the summer (such as when a student has been without services for a period of time), Daylight analyzes these Action Items using its standard methodology. For cases in which the student is in a ten-month program and implementation of the Action Item over the summer is impossible, the Action Item must be implemented within 35 days of the start of the new school year, if no time frame was specified in the Order (or within the particular time frame articulated by the hearing officer).

B. AFC Comment Topics and Daylight's Positions not Otherwise Addressed Above

1. Compliance with Substantive Requirements

AFC expressed concern regarding the DOE's compliance with the substantive requirements contained in an Order. Specifically, AFC stated that for Action Items requiring a substantial change to the student's IEP, placement, services, or classification, these Action Items should be deemed implemented only when the DOE made the required substantive changes or taken the required substantive actions.

<u>Daylight's Response:</u> Daylight's methodology regarding compliance with the substantive and procedural validity of an Individualized Education Program ("IEP") was articulated to the Parties in Section III.E.2. of Daylight's Second Quarterly Report. Where the Order contains specific requirements (e.g. certain participants at an IEP meeting or program recommendations), Daylight requires documentation to prove that the specific item was implemented (e.g. list of attendees at the CSE meeting includes school psychologist, new placement recommendation on IEP document is 12:1:1, etc.). Daylight's Timely Implementation analysis does not address the procedural validity or appropriateness of the recommendations as that determination is beyond the scope of our review.



New York | Washington | Miami | London
daylightforensic.com

Privileged & Confidential

2. Use of Vouchers

   a. RSA as Evidence of Timely Implementation

   AFC argues that the issuance of an RSA or another voucher does not indicate that an ordered service has actually been provided, and therefore the issuance of an RSA should not, by itself, constitute implementation. AFC notes that this is especially true when the RSA or other voucher is for a service in a non-shortage area. AFC believes that an Action Item should be deemed implemented based on the issuance of an RSA or other voucher only where there is further evidence that the student is actually receiving the ordered services.

   <u>Daylight's Response:</u> Daylight's continues to conclude that an RSA is considered Timely Implemented if it was issued before the final due date or it specifically references the Order number or appropriate school year, and was uploaded in DAITS prior to the final due date. In addition, where the Order specifically requires the DOE "to provide" a service, Daylight requires evidence that the student is actually receiving the ordered services.

   b. Issuance of an RSA-2

   AFC also commented that an RSA-2 not yet completed by the provider does not demonstrate that the parent was provided with a valid RSA or that the service will be or is being provided to the student.

   <u>Daylight's Response:</u> Regarding the use of an RSA versus an RSA-2, Daylight treats both vouchers the same since they both list the service to be provided, as well as the duration, frequency, and provider-to-student ratio as mandated by the hearing officer.

3. Substantial Attempts

   AFC states that "Substantial Attempts" analysis should only be reviewed for purposes of evaluating whether to count an Action Item only if the DOE does not have all the necessary documentation for payment. AFC concludes that if the DOE has all the necessary documentation before the due date for implementation and failed to make a timely payment, the Action Item should be found to be counted and unimplemented, regardless of the DOE's attempts to contact the parent.



New York | Washington | Miami | London
daylightforensic.com

Privileged & Confidential

<u>Daylight's Response:</u> Daylight reviews the evidence submitted at the hearing for each reimbursement Action Item to determine whether the DOE was provided with the necessary documentation to process payment. Where all of the necessary documentation was submitted at the hearing and is available for review in IHS, a Substantial Attempts analysis is not conducted.

4. Pendency Orders

AFC commented that Daylight found some pendency Orders to be Timely Implemented if a payment was made or an action was taken before the Order was issued, noting that the pre-order payment or action could have been made based upon a prior placement and not necessarily as a result of the pendency Order.

<u>Daylight's Response:</u> Daylight's general methodology requires documentary evidence of implementation to be dated after the Order was issued. There are some instances, however, where the DOE moves forward with implementation between the date of the hearing and the date that the Order was issued. Where there is evidence that implementation has occurred during this time, Daylight analyzes these Action Items as Timely Implemented. In addition, if an RSA or P-1 letter was issued prior to the Order date but specifically references the entire school year or months specified in the Action Item, Daylight similarly accepts this as evidence that the service was provided.

III. Conclusion

Daylight continues to analyze Orders and Action Items for Timely Implementation using the methodology set forth in our First and Second Quarterly Reports and as indicated above. While most cases fall neatly within our protocols, it is sometimes necessary for Daylight to analyze Action Items on a case by case basis.