UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LV, RC, AD, NA, ADJ, YG, LO, AP, RLB, RD,
and JYW, individually; and VSG, HR, CW, SS,
MG, MS, ST, RZ, MC and JP, on behalf of
themselves and all others similarly situated,

                               Plaintiffs,

             -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; NEW YORK CITY BOARD OF
EDUCATION; JOEL KLEIN, in his individual and
official capacity as Chancellor of the New York
City School District,

                               Defendants.

No. 03 Civ. 9917 (RJH)

**DECLARATION OF JUDY NATHAN
IN OPPOSITION TO PLAINTIFFS'
MOTION FOR THE APPOINTMENT
OF A SPECIAL MASTER AND
OTHER RELIEF**

        **JUDY NATHAN,** declares under the penalties of perjury pursuant to 28 U.S.C.

§ 1746, that the following is true and correct:

        1.      I am the First Deputy Counsel of the New York City Department of Education

("DOE"). I have been actively involved with all aspects of this litigation and, as such, am fully

familiar with the facts set forth herein. I submit this declaration in opposition to Plaintiffs'

motion for the appointment of a special master and other relief.

        2.      The Individuals with Disabilities Education Act, as amended by the Individuals

with Disabilities Education Improvement Act of 2004 ("IDEA"), allows that the parent of a

student with a disability may file a due process complaint relating to the identification,

evaluation or educational placement of a child with a disability, or the provision of a free,

appropriate public education to the child. 20 U.S.C. § 1400; 34 C.F.R. § 300.507. See also 8

NYCRR § 200.5. The impartial hearing decisions at issue in this matter arise from these due

process procedures. Neither the IDEA nor state statutes or regulations contain provisions about

the timing for implementation of the Orders issued after impartial hearing. The Stipulation in this case established a framework by which the DOE's implementation of such orders would be evaluated.

3.      Pursuant to the Stipulation of Settlement, DOE's performance is reviewed and reported on by an Independent Auditor. Initially, the court appointed Daylight Forensics & Advisory as the Independent Auditor. In 2010, Daylight was sold to Navigant Consulting ("Navigant"), which assumed this role.

4.      Pursuant to the Stipulation, Navigant reviews each order issued by an Impartial Hearing Officer, identifies the different obligations or action items[1] contained within those orders and reviews DOE databases to determine whether the action items were implemented within the deadline set forth in the order or if there is no such deadline, within 35 days of issuance of the order.[2] The Stipulation also authorizes Navigant to conduct interviews of various DOE employees responsible for implementing such Action Items prior to finalizing the drafts of its quarterly reports.

5.      The Stipulation defines two broad categories of orders and action items – payment and service. Generally, payment action items are those action items which are implemented

---

[1]      Action items refer to the individual obligations that make up an impartial hearing order.

[2]      Navigant reads each order, independently describes each action item and analyzes available information to determine if the obligation was implemented or if the lack of implementation is excused under the Stipulation. With rare exception, the description of action items by the DOE's Office of Legal Services has been accurate, but Navigant has nonetheless continued to redo the description in its own database. Navigant's bills continue to range between $150,000 and $225,000 per month. This expense has not decreased over the life of the Stipulation. Because Navigant's role in the Stipulation is to audit the DOE's compliance, the same result could be accomplished, at a vastly reduced cost, were Navigant to rely on the DOE's description of the action items in the first instance and review a statistical sample rather than review each and every order and action item. There is only one obligation in the Stipulation that flows from a finding that an Order was not fully implemented – the DOE must send a "non-implementation notice" which operates as evidence if the parent seeks assistance from the court in obtaining compliance. During the term of this Stipulation, we are not aware of any cases where a parent has actually commenced an action to obtain an order directing the DOE to comply with an Order.

through the payment of money, either as reimbursement or prospective payment.[3]   Service action items are all other action items.   These can range from directing DOE to reconvene an IEP team meeting, provide the parent with the authorization to obtain a service, arrange for transportation to and from school, to providing a myriad of different services to a student, or training to a parent.

6.     The Stipulation contemplated the DOE would meet three benchmarks – the first benchmark required the DOE to timely implement 75% of service action items and 70% of service orders[4] or versa versa, and 75% of payment action items and 70% of payment orders or vice versa for a six month period.  If the first benchmark were met, the percentages increased to 85% and 80% for a second six month period.  The third benchmark contemplates timely implementation at a rate of 91.5% and 88% for a two year period.  If the DOE met the benchmark for one category of orders (service or payment), it could move to the second benchmark even if it had not met the benchmark for the other category.  If a benchmark were not met, the DOE had the opportunity to develop and implement a corrective action plan before attempting again to meet the benchmark.

---

[3]      Although the term "payment action item" suggests a simple action, the reality is far different. "Reimbursement" action items can be issued for payments that have been made as well as for those that not yet been made.  For example, a parent can receive an order directing the DOE to reimburse the parent for tuition at a private school even if the parent has not yet paid the tuition in full.  The DOE will reimburse the amount for which proof of payment is submitted and will make additional reimbursement as further proof is submitted.  "Prospective payment orders" can include an order directing the DOE to pay tuition going forward at a private school – where the order is a final order, the DOE makes these payments on a semester basis to ensure that the student is still attending – or an order that enables the parent to obtain services for his/her child over time, for which the DOE will make payment upon submission of invoices.

[4]      An order is considered timely implemented only if all action items within the order are either timely implemented or uncounted.  If even one action item out of multiple action items within an Order is not timely implemented, the entire Order is deemed not timely implemented.

7.      When Navigant first began auditing under the Stipulation, before issuing its draft report and analysis, it asked the DOE if it had additional documents with respect to particular action items.  This provided DOE the opportunity to address many of Navigant's concerns before the issuance of the draft report.  After the first few reports were issued, Navigant, over the DOE's objection, indicated that it would no longer engage in this process; rather, the parties would have the opportunity to submit additional material in response to the draft reports before they were finalized.

8.      In its report for the Post Corrective Action, First Benchmark Period,[5] Navigant reported that the DOE accomplished the following with respect to counted Orders and Action Items issued during the period from September 8, 2009 – January 31, 9, 2010 that should have been implemented during that period:

| | Total | Timely implemented | Not timely implemented |
|---|---|---|---|
| Service action items | 848 | 691 (81.5%) | 157 (18.5%) |
| Service orders | 326 | 224 (68.7%) | 102 (31.3%) |
| Payment action items | 387 | 243 (62.8%) | 144 (37.2%) |
| Payment orders | 265 | 165 (62.3%) | 100 (37.7%) |

8.      Thus, without even accounting for interpretation disputes with Navigant, the DOE satisfied the first benchmark for service action items and narrowly missed the first benchmark for service orders by four orders.  Further, more than 30 additional  service action items are identified as completed in the Navigant report, albeit not within the time frame contemplated by

---

[5]      This is the period known as the "post corrective action first benchmark period." This period followed a period during which the DOE was required to develop and implement a corrective action plan when it failed to meet the benchmark during a six month period running from approximately June 2008 – November 2008.

the stipulation or assigned by Navigant, some of these missing the deadline by only one or two days. Other action items were completed either after Navigant completed its review or were completed timely, but the DOE could not produce the documentation required by Navigant.

9.      With respect to payment action items, the DOE has a major interpretation disagreement with Navigant, which is discussed in detail in the Affidavit of Stacey Reeves, sworn to January 24, 2011 (the "Reeves Affidavit").[6] If DOE's interpretation is accepted, the DOE would meet the first benchmark for both payment action items and payment orders, as follows:

|  | total | Timely implemented | not timely implemented |
|---|---|---|---|
| payment action items | 387 | 290 (74.9%) | 97 (25.1%) |
| payment orders | 265 | 203 (76.6%) | 62 (23.4%) |

## Computer Tracking System – DAITS

10.     In connection with this litigation, DOE developed an implementation tracking system, known as the Decision Action Item Tracking System ("DAITS"). The DOE began using DAITS in or about June 2008, when the monitoring under the stipulation began. DAITS was designed as a system to track the deadlines for implementing Action Items, and in which

---

[6]      As described in the Reeves Affidavit, as part of its corrective action, the DOE established a system for outreach with respect to prospective payment orders that it believed would satisfy Navigant. In a memorandum dated February 11, 2009 (annexed hereto as Exhibit 1), Navigant stated that a prospective payment action item would be "assessed as Timely Implemented … [if] the DOE meets the "Substantial Attempts" test with at least one of the three required outreach attempts made directly to the provider." The DOE's corrective action was designed to satisfy this interpretation. The DOE was not fully informed that Navigant found Daylight's earlier stated requirement that parent/advocate outreaches had to occur on different days also applied when the outreach was made to a vendor in addition to the parent until after the entire post corrective benchmark period was over. The DOE received Navigant's draft for the post Benchmark period first quarter on January 22, 2010. DOE submitted its comments in March, 2010 and Navigant finalized its first quarter report in April 9, 2010. By that time, the second quarter post-corrective action had already ended.

DOE personnel could store documents relevant to the implementation of Action Items.  It also was designed to automatically feed information into the DOE's payment system, known as FAMIS, which is linked to the City's payment system, known as FMS.

11.     Impartial Hearing Officers submit their decisions to the Impartial Hearing Office. The Impartial Hearing Office uses case management software known as the Impartial Hearing System ("IHS").  Decisions are transmitted from  IHS to DAITS through an overnight feed. Staff within the DOE's Office of Legal Services review new orders on a daily basis and enter into DAITS each of the specific obligations (or action items) that is required by the Impartial Hearing Order, the deadline for implementing the action item, the category of action item, and assign each action item to a person known as an Implementation Liaison.  DAITS includes a clock that counts down the number of days remaining to the implementation deadline.  The clock continues to count until an action item is indicated as being implemented or implementation is no longer required.

**Implementation Liaisons**

12.     The implementation liaisons are responsible for implementing the action item, or communicating with other offices within the DOE if this were necessary for implementation and for documenting implementation in DAITS.

13.     Payment action items are assigned to an implementation liaison in the Impartial Hearing Office ("IHO").  The process for implementing payment action items is described in the Reeves Affidavit.

14.     The implementation liaisons responsible for ensuring implementation of service action items report to different offices within the DOE, largely based on the type of school the child attends.   During the period from September 8, 2009-January 31, 2010, implementation

liaisons for service action items reported either to the Committees on Special Education ("CSE"), the Central Based Support Team ("CBST"), Integrated Support Centers ("ISC") or Children First Networks.

15. The CSEs serve students who are not attending DOE public schools, but attend either New York State approved non-public schools based on a recommendation on the student's Individualized Education Program ("IEP"), or are unilaterally placed in a private school by their parents. The CSE implementation liaisons were responsible for implementing action items relating to students in non-public schools. The CBST is responsible for coordinating placement of students in state approved non-public schools. The ISCs were the arm of the DOE that provided support services to schools. Each of the five borough-based ISCs employed a Deputy Director of Special Education, who oversaw the implementation liaisons working under that Deputy's supervision.

16. During the 2009-10 school year, approximately 200 schools were part of Children First Networks ("CFNs"). Each CFN consists of approximately 20 schools. As of summer 2010, the ISCs were dissolved and all public schools now are assigned to one of 60 CFNs. A CFN is composed of 12 -13 staff, who represent specific functional areas but work together to support schools. For example, each CFN has staff who focus on the following areas: budget, English Language Learners, facilities, food, grants, health, human resources, payroll, procurement, special education, safety, suspension, transportation, and youth development. These staff act as resources for the schools in their network. Each CFN has 2 full time administrative staff plus ½ of a clerical staff assigned to special education. The special education CFN staff provide support to their schools in all areas of special education, including IEP development and implementation, placement and provision of services, support for instructional programming. They represent

their schools in the impartial hearing process.   One full time Educational Administrator is designated as the implementation liaison for each network.   The DOE anticipates that an additional special education specialist will be hired shortly for each CFN.  Each CFN has a network leader, who also provides support and assistance to CFN staff.

17.     As of the 2010-11 school year, all CFNs are also grouped into one of six clusters. Each cluster is comprised of approximately ten CFNs.  The clusters are comprised of approximately six high level staff who provide operational support to their networks.  Each cluster has a designated special education point person, who disseminates information, helps trouble shoot problems and provides other managerial assistance.

18.     The CSEs continue to be responsible for implementing the orders for students who do not attend public schools, while the CBST remains responsible for implementing placement in state approved non-public schools.  District 75 (the Citywide Special Education District for students with the most severe disabilities) has its own dedicated implementation liaison.

19.     DOE continues to seek ways to streamline implementation of orders by designating more staff with different responsibility for implementation.  Most recently, for example, after consulting with the head of the Office of Pupil Transportation, DOE determined that transportation action items will  be directly assigned to a liaison in that office given the expertise of that office .   The OPT implementation liaison will be assigned action items directly from the Office of Legal Services that require either bus transportation for a student or the provision of metrocards for students who are not attending public schools.

20.     The transition to CFN has improved the implementation of orders and action items involving public school students, primarily because of the stronger relationships between the CFN staff and a smaller group of schools.

## Training and Support for Implementation Liaisons

21.     The Office of Legal Services regularly provides training to Implementation Liaisons about how to use DAITS and what steps are needed to implement action items and satisfy the outside auditors.  This includes the development of training materials designed to function as a user's guide for implementing different types of action items.  With the transition to CFNs at the end of last school year, over 60 implementation liaisons were trained over the summer; additional small group sessions have continued over the school year.

22.     The Office of Legal Services regularly meets with the Deputy Directors of Special Education for the ISCs and staff in the Impartial Hearing Office and the Bureau of Non-Public School payables to discuss implementation issues and ways to address issues raised by Navigant in its monitoring reports.  The Office of Legal Services training materials are available on the DOE's website for implementation liaisons to access.  Office of Legal Services staff consult with implementation liaisons on a daily basis to address specific implementation issues.

## Use of DAITS to track implementation of action items

23.     After the Office of Legal Services has entered the action item in DAITS, determined and entered the deadline for implementation, and identified the Implementation Liaison, DAITS automatically generates an email to the implementation liaison to advise him/her that an action item has been assigned and the implementation deadline.  The implementation liaison then accesses DAITS to see the assigned action items, the underlying Order and the implementation deadline.  DAITS permits documents to be uploaded, saved and identified with

specific action items.  It also allows the user to enter comments about steps taken to achieve compliance and whether an action item has been implemented. [7]

24.     Implementation liaisons have been directed to upload into DAITS the documents that demonstrate their implementation of each action item assigned to them.  This can include scanning and uploading a voluminous IEP, or a phone log showing telephone communications that were made.   The auditors review the materials in DAITS and also look at the Special Education Component of the DOE's Student Information System, to determine if an action item has been timely implemented or should be uncounted.  Notably, although the Stipulation allows an action item to be "Uncounted" if parental outreach has been attempted but the parent has not taken necessary steps for implementation, DAITS does not permit a liaison to close such a case.  Rather, the case status remains as "implementing" because, although the stipulation removes this action item from consideration for reporting purposes, it remains an outstanding obligation of the DOE.

**Ongoing Improvements to DAITS**

25.     As discussed below, the DOE has been actively engaged in efforts to improve its implementation of action items consistent with the obligations imposed by the outside auditor and the Stipulation in this case, and develop better tracking systems.  As described in the

---

[7]     Although DAITS includes a feature that allows the liaison to enter comments and information about communications, this has been found insufficient by the auditors, who have demanded information as to the date, time, telephone number and to whom the person spoke to in order to accept a telephone communication.  Comments about steps taken to implement action items are not accepted absent additional papers verifying the comment.  For example, a comment that a private school confirmed in a telephone call that it was providing the recommended services was not deemed sufficient to show that the student was receiving the required service, although presumably a written email or letter would have been sufficient.  See Order 122335 (notation of communication from state approved non-public school not accepted as sufficient proof of implementation); Order 123105 (comment that student's file was sent via messenger not accepted as proof of forwarding a copy of file); Order 123253 (notation in DAITS that student and parent met with placement officer held insufficient proof of implementing action item requiring placement officer to meet with parents to discuss appropriate placements).  Daylight's analysis with respect to particular Orders from the Post Corrective Action First and Second Quarters are annexed as Exhibit 2.

Affidavit of Veronica Conforme, Chief Financial Officer ("CFO") of the DOE, sworn to January 24, 2011, all offices having responsibility for implementing impartial hearing orders now report to her with respect to implementation of hearing orders. In addition, a Project Manager has been hired, who will report directly to the CFO and will further the actions taken to date to address the implementation of impartial hearing orders.

26.     As noted above, DAITS was first used with the start of monitoring in this case. With use, DOE has learned of some features that hamper timely action and has modified these features for greater efficiency and to improve performance. DAITS has also been modified to respond to Navigant's findings. In 2009, for example, DOE added a feature that generates an email to the implementation liaison when the status of the action item is amended in such a way that the liaison now must take action, take different action, or is no longer obligated to act. Also, if an implementation liaison is reassigned, an email is automatically generated to the new liaison; if the implementation deadline changes, an email is generated.

27.     DOE also added a feature that allows the implementation liaisons to continue to implement some action items while others within the Order are being appealed, a previous limitation in DAITS that had caused action items to go unimplemented during an appeal.

28.     Other features also have been added or upgraded to make DAITS more "user-friendly." For example, rather than listing all Orders on the first computer screen once DAITS was accessed -- necessitating the liaison to use a search function to identify his/her cases -- the landing page now displays only those Orders that contain action items assigned to that implementation liaison. Other enhancements include improving the navigation functions of the system to allow for simplified data entry and easier access to information; simplifying the transmission of an email directly from DAITS; allowing users to switch between screens more

easily; adding fields of information, allowing users of the payment system (FAMIS) to more readily view and enter information in DAITS.

29.    DOE is engaged in a review of each business practice within DAITS to continue to improve implementation, oversight of implementation, and to explore ways in which the functions tracked in DAITS can be automated.   The DOE's Office of Auditor General is analyzing how DAITS can become a more data driven system to improve the ability to audit results, insure accuracy in reporting when an action item is completed and to improve reporting capabilities of the system.

30.    While the DOE vigorously disputes the analysis that Navigant has applied to its outreach efforts for payment action items in particular, DOE has already modified DAITS in an attempt to meet the requirements imposed by the auditors (See Reeves Affidavit).  The DOE has taken additional steps to ensure that the time deadlines imposed by Navigant are satisfied.  For example, DOE is reprogramming DAITS so that outreach letters will automatically be sent on a predetermined time schedule.  Also, phone call information will be more easily tracked, in an effort to respond to Navigant's requirement that a notation of a phone call is not sufficient, and that more information (i.e., the date, time, phone number called, and who was spoken to or a message left) must be noted.

31.    DOE also has recently instituted a system of weekly emails to both the implementation liaisons and their supervisors to advise of all open (pending) action items.  An additional email is sent to supervisors to access a report that delineates those action items that were completed by implementation liaisons during the prior 7 days.  This second report is important so supervisors can ensure that implementation liaisons have uploaded the relevant documents into DAITS.

32.     Contrary to the assertions of plaintiffs, the DOE has taken action to address the issues that have been raised by Navigant.  The DOE implemented a corrective action plan in response to Navigant's First Benchmark Report that resulted in a vast improvement in implementation.   Given the timing of Navigant's reports, the DOE did not learn that its corrective action for prospective payment orders would not satisfy Navigant until after the end of the Post-Corrective Action Period..  When this interpretation disputes is resolved, given the actions taken by DOE to date, there is no reason to think that the DOE would not amend this process if Navigant's interpretation stands.

### Special Education Student Information System (SESIS)

33.     A major DOE initiative that will have a direct beneficial effect on implementing impartial hearing action items is the new special education database, known as the Special Education Student Information System ("SESIS").  As of the date of this declaration, SESIS is in use in approximately 700 schools.  DOE anticipates that all schools will use SESIS within the next two months.

34.     The first phase of SESIS implementation involves the initial steps in the special education process – concerning referrals, evaluations and assessments, and IEP development -- through initial IEPs, annual reviews and other re-evaluations.  Further phases of SESIS are intended to address and capture information concerning the placement of students and the provision of related services.

35.     SESIS offers significant benefits to the provision of special education services and implementing impartial hearing decisions.  Most notably, instead of Individualized Education Programs or IEPs being written out on paper forms, with the program and service requirements then data entered into a computer system, they will be prepared and maintained

electronically in SESIS.  Related services authorizations and other forms will be generated and maintained in SESIS.[8]  SESIS also generates required letters to parents based on information entered by DOE staff.  SESIS maintain a record of all letters in a document library for the student.  SESIS also maintains an event log, that indicates the date and time when actions have been taken. There is a contact log, in which phone calls and emails will be tracked.  Rather than have to scan and upload documents into DAITS, SESIS offers an easy repository of the documents that are involved in the provision of special education services and specifically for this lawsuit, the implementation of service action items.  Ultimately, virtually all documents for special education services should be generated through SESIS.

### Navigant Has Exceeded its Authority and Has Improperly Construed the Stipulation

36.     As stated above, the Stipulation defines two broad categories of orders and action items – payment and service.  Navigant's analysis of various orders shows the difficulty faced by an outside auditor evaluating implementation after the fact.  Moreover, Navigant's analysis also does not reflect the realities involved in implementing many types of action items.  Navigant's approach imposes its own interpretation of how and when action items should be implemented, far beyond what was contemplated by the Stipulation.  Instead, the DOE's reasonable approaches to implementation should be accepted; these approaches account for the circumstances of the students involved and also take into account the DOE's Standard Operating Procedures Manual for Students with Disabilities.[9]

---

[8]     This will result in the correction of multiple instances where the terms of the Related Services Authorizations that were issued do not match the language of the Order.

[9]     Implementation of impartial hearing orders often requires the same action that is required to provide services or payment for students who have not proceeded through the hearing process, such as in implementing IEPs.  The same procedures should be used in both instances.  Navigant's interpretations can result in inconsistent practices.

37.    Under Navigant's practices, even when implementation liaisons follow DOE's longstanding standard rules and take action to provide the required service or make the required payment, Navigant frequently finds the action item not Timely Implemented, because DOE did not satisfy some new requirement imposed by Navigant which Navigant deems necessary to satisfy its construction of the Stipulation.

38.    The actions that are needed to implement an action item must be consistent with established business practices, and not subject to revision by an outside monitor.  We highlight a number of interpretation issues below and also refer the court to the comments submitted in response to Navigant's draft reports for further examples.  See Penski Decl. at  Exhibits V, W, W, Y and Z.

## A. Deadline for Implementation when the Impartial Hearing Officer Issues a Clarification Order

39.    Many impartial hearing orders do not clearly set forth the obligations to be implemented.  It is important that the DOE be able to obtain clarification of these orders.[10] Where this happens, the implementation deadline must be adjusted to reflect the time it takes to get the clarification.  Navigant, however, does not consistently do so.  For example, Interim Order 123950, issued on December 4, 2009 contained one service action item, documenting the student's "pendency" placement.[11]   The DOE promptly asked for a clarification of the order because the impartial hearing officer had erroneously stated that pendency began for a period prior to the parent's impartial hearing request.  The impartial hearing officer clarified his Order on December 29, 2009 by stating that part of the decision was not, in fact, pendency, but that the

---

[10]      This benefits parents as well by reducing the need for the DOE to appeal impartial hearing orders.

[11]      "Pendency" acts as a form of automatic injunctive relief, which permits a student to remain in the last agreed upon placement pending the resolution of the dispute that is the subject of the parent's impartial hearing request.

DOE was nonetheless obligated to fund the placement from the start of the school year. The DOE argued that the time frame for implementation should be modified to reflect the date on which the impartial hearing officer issued the clarification order . Daylight wrongly concluded that because the end result was the same (i.e., payment from the start of the school year), the implementation deadline should not be modified. This misses the point. The DOE asserted that the initial order erroneously awarded more pendency than the parent was entitled to. The DOE could not have anticipated that the impartial hearing officer would clarify his decision in a way that both validated DOE's argument by noting that pendency was not involved, yet achieved the same result. But that is precisely what happened here. By measuring implementation from the original hearing date, the DOE was penalized for the impartial hearing officer's error.

**B. Parent Appeals**

40.     Another area in which there have been problems with Navigant's interpretation occurs in cases when the parent disagrees with all or part of the order and seeks relief from the State Review Office. Pursuant to 8 NYCRR § 279.2, a parent is required to file a Notice of Intent to Appeal at least ten (10) days before service of the petition on appeal and within 25 days of the Order. The Petition must be served within 35 days of the date of the Order. This plain Notice, which simply advises that the parent intends to appeal, does not inform DOE of the nature of the dispute or the portion of the Order with which the parent disagrees. Rather, the Notice of Intent simply starts the process for the Impartial Hearing Office to prepare a transcript of the impartial hearing order for review by the State Review Officer. A sample of a Notice of Intent to Appeal is annexed as Exhibit 3. The parent is not permitted to submit his/her full petition, which is the document that sets forth the substantive information regarding the appeal, until ten days after the parent files the notice.

41.     The dispute with Navigant rests over whether action items should be assessed for implementation from the date of issuance of the Order.  Navigant does not consistently assess the implementation of action items where a parent has appealed the impartial hearing order.  In a memorandum dated December 23, 2008 (attached as Exhibit 4), Navigant stated that it would look for whether non-appealed action items were implemented within the time frames of the Stipulation.  This after-the-fact approach is not workable.   Until the parent files a petition, the DOE cannot know which of the action items are actually being appealed.  Thus, the DOE cannot be held responsible for implementing action items until after the petition is received and assessed.  In such cases, because implementation cannot be measured from the issuance of the impartial hearing order, the action items should be Uncounted under the Stipulation.

42.     However, Navigant frequently reviews the petition after it is filed and decide which action items should have been implemented before the 35 day deadline. See, e.g., Order 122610, Order 123252.  To comply with Navigant's requirements would require DOE to foresee, at the time the Notice of Intent is filed, which action items would actually be the subject of the appeal, or else to begin to implement each action item notwithstanding that some or all of them might be the subject of the appeal.  It is not reasonable for Navigant to engage in such a hindsight analysis.  Moreover, it would be a tremendous waste of resources if DOE were required to implement every action item, only then to learn that many are the subject of appeal, the result of which might be to alter the obligation.   Thus, where a parent indicates an intention to appeal, the Order should be deemed "Uncounted" for purposes of the Stipulation because the DOE cannot be held to a requirement to implement within 35 days of issuance of the order.

## C.  Actions to be taken "Immediately" or "Forthwith"

43.    Navigant also incorrectly issued an interpretation that limits the time for implementation when an order instructs the DOE to take action "immediately" or "forthwith."  In the course of its audit work, Navigant informed the parties that it would unilaterally interpret the terms "immediately" or "forthwith to require action within 3 business days.

44.    The DOE submits that there is no authority for such an interpretation.  The Stipulation requires DOE to implement Action Items "within the length of time specified in the Order or, if no such time is specified in the Order, within 35 days of issuance" of the Order or Action Item.  Stipulation at ¶ 1.ii.  As the terms "immediately" and "forthwith" do not describe a date or specified length of time, implementation should be assessed under the 35 day deadline.  Faced with Navigant's unilateral assessment of what these terms should mean, and absent any means in the Stipulation for an independent resolution of this dispute, the parties agreed that implementation in these situations would be measured using a 7 business day time period, while acknowledging that sometimes compliance within 7 business days would be impossible.  In reaching this agreement, however, which was done solely to allow Navigant to review DOE's performance, the DOE did not waive its position that there was no basis in the Stipulation to shorten the time period.

45.    Navigant also has failed to consider any showing that the DOE could not implement an action item within seven days or whether implementation after seven business days should be considered timely, essentially assuming that anything can be done within the 7 day period.  The rigidity of this position shows why the IDEA in fact contains no provision addressing the time frame for implementing impartial hearing Orders, rather recognizing that

each individual case must be considered to determine implementation. For example, in Order 123289, the DOE was ordered to integrate the student on a gradual basis into PS 27, with a gradual increase over time, and the DOE was to implement this "immediately." Navigant imposed a 7 day completion date (January 25, 2010), and said that the action item was not implemented timely because the student did not begin attending on a full time basis until February 8, 2010. However, the action item itself directed that the student's integration should be gradual; hence, it was consistent with the order that the student was not attending full time immediately (or within 7 business days). In order 124941, the DOE was required to "immediately provide four hours of home instruction per day." Navigant assessed the order with a deadline of December 29, 2009, which fell in the middle of the winter break, when home instruction would not have been provided. In fact, home instruction (but not a a rate of 4 hours per day) was started before the winter break and the Assistant Principal indicated that four hours would be in place as of January 4, 2010, the first day of school after the winter break. Nonetheless, Navigant determined this action item was not Timely Implemented.

### D. Placement in State Approved Private Schools

46.     Where an action item provides that the student is to attend a particular state approved non-public school, Navigant looks at the DOE's Contract Aid Financial System ("CAFS") to see if a payment has been made to the school prior to the implementation deadline. (See memorandum dated July 13, 2009 annexed hereto as Exhibit 5). If no payment has been made by that deadline, Navigant determines that the action item is not Timely Implemented. See, e.g., Order 123950.[12] This rigid approach ignores the process for paying tuition at a state

---

[12]     Navigant's interpretation is particularly egregious in this action item which stated that the student's pendency placement was a state approved private school and that the DOE should pay the tuition as it comes due. The DOE demonstrated that it emailed a request to the school to add the student to the school's roster, and that payments were thereafter made to the school. Navigant erroneously

approved non-public school, and the true purpose of an action item that requires payment for a particular non-public private school, which is to ensure that the student is able to attend the school. The precise timing of the payment to the state approved non-public school is not the true issue.

47.     As DOE explained to Navigant, in order for a non-public school to be paid, the school is required to place the student on its certified monthly register, which is an indication that the school has accepted the student for enrollment. This is an action that only the school can take, as DOE cannot place the student on the school's register. Payment can be made to the school only once this has been done. The assessment of DOE's performance in such situations should therefore be whether the student is able to attend the school. Where the DOE receives an order directing a state approved non-public school placement, the CBST communicates, usually by email, with the school to ask the school to placement the student on its roster. Thus, where there are emails or other communications from the DOE prior to the implementation deadline informing the school that the student can attend, the action item should be considered timely implemented, without regard for when the non-public school actually received payment is made.

48.     Moreover, when a student is placed in a state approved non-public school, implementation of the IEP by the school should be assumed. Parents are integrally involved in the selection of a state-approved private school. Private schools should not accept a student unless the school and parent agree that the student's needs can be met at the school. Indeed, the DOE lacks authority to deny an accepted placement at a particular state approved private school, once there has been a determination by the school and parent that the student should attend such a school. Navigant's analysis fails to recognize this reality. There were a number of orders in

concludes that because the first payment occurred after the implementation deadline, the action item was not timely implemented. What it fails to recognize is that the student was able to begin attending the school before the implementation deadline.

20

which the Hearing Officer identified the child's state approved private school placement and also noted that the IEP was to be implemented at the private school. In each of these cases, Navigant looked for proof that the referenced program or services were in place at the private school and where insufficient proof was provided, deemed the action item not timely implemented. This interpretation is even more problematic when the order directs this placement as pendency. In such case, the parent seeks to continue a service already in place. By law, once the parent requests an impartial hearing, the child is entitled to remain in the last agreed upon placement See, e.g., See Order 122733 (attend a center based program at private school); Order 122356 (student shall be placed at private school in a 6:1:3 class as pendency; Navigant finds action item not timely implemented because no confirmation of actual class placement); Order 123209 – pendency placement at private school in 12:1 CTT class; Order 123211 (pendency placement in private school with special education teacher support services).

## E. Additional Interpretation Issues That Have a Negative Impact on Timely Implementation

49.     Many of the interpretations given by Navigant reflect a failure to understand the DOE's business practices. These reasonable reasonable practices for acting with respect to students with disabilities should be given deference. Some examples are set forth below.

50.     Where an action item requires the DOE to provide transportation to services or to permit the parent to obtain an evaluation at DOE expense, Navigant incorrectly looks for actual payments or the actual evaluation, rather than referring to DOE's standard operating practice. Pursuant to DOE's standard operating practice, where a student is given a related services authorization ("RSA") which authorizes him to independently obtain related services at DOE expense, or a P-3 letter which allow him to independently obtain special education teacher support services ("SETSS"), the DOE also sends a form which allows the parent to submit a

request for reimbursement of transportation expenses to obtain the authorized services. Thus, where an action item contemplates that the DOE will provide transportation to related services or SETSS, the implementation liaisons follow DOE protocols and issue parents these reimbursement forms together with the underlying authorizations to obtain the services. Navigant has not accepted this as implementation of the action item; rather, unless the parent has actually submitted a claim for reimbursement, the action item is considered unimplemented.

51.    Likewise, when the action item authorizes the parent to obtain an independent evaluation at public expense, the DOE's standard practice is to issue the parent an authorization to obtain the evaluation at a certain rate, with the evaluator to submit an invoice for payment. When an impartial hearing order contains a provision awarding an independent evaluation or assessment, this means that the parent is authorized to obtain his/her own evaluation of his/her child, and not rely on an evaluation previously conducted by the DOE. Navigant has not accepted the issuance of an authorization to obtain a private evaluation as implementation absent evidence that the parent actually obtained the requested evaluation. See, e.g, Order 121751. However, the DOE has provided the parent with the tools needed to obtain the evaluation. DOE cannot be held accountable and penalized if the parent chooses not to do so.

52.    Navigant also misconstrues what action can constitute implementation. For example, if the action item requires an action but the action occurred shortly before the order was issued, Navigant fails to give the DOE credit. See, e.g., Order 124411 (order required among other things a psychiatric evaluation; Navigant fails to give credit for evaluation conducted in month before decision was issued). This fails to consider that the DOE continues to meet the needs of its students during the pendency of an impartial hearing.

**F.  Outreach**

53.     The goal of the Stipulation was not to impose new obligations on the DOE but to ensure that they completed existing obligations timely.  By imposing onerous outreach obligations, Navigant exceeds the DOE's previously developed practices.   Navigant conflates the terms "substantial showing of outreach" with "substantial outreach" to impose additional obligations on the DOE.

54.     As discussed in detail in the Reeves Affidavit, Navigant's analysis of payment orders has largely been a fine tooth comb assessment about outreach attempts, imposing hyper-technical requirements.   In two thirds of the payment action items where the DOE was found not to have Timely Implemented the Action Item, the sole issue was a perceived flaw in the outreach required by Navigant.  In fact, the DOE is making regular payments with respect to payment action items.

55.     Payments have been made with respect to each of the prospective payment action items issued during the period between September 2009 and February 2010, the period covered by the Post Corrective Action First Benchmark Report.   In 114 of these action items, the DOE has paid up to the maximum amount authorized under the action items.  In the remaining cases, the student is still eligible to receive some services and additional invoices will be paid as services are rendered.  Full payment has been made in 382 of the 387 reimbursement action items where implementation was required between September 2009 and February 2010, 382 have been paid in full.

## The Use of RSAs Is Appropriate

56.     DOE issues parents related service authorizations ("RSAs") to allow parents to obtain required services on their own at DOE expense.  Plaintiffs argue that the use of RSAs is insufficient means for DOE to demonstrate compliance with its obligation to provide certain services.  This argument is wrong and ignores the context in which services are to be provided.

57.     In the cases challenged by plaintiffs and discussed in the Penski Declaration, the students were parentally placed in private schools, the parents sued for reimbursement of tuition paid to private schools and also sought to receive the related services recommended in the IEP. As Navigant assessed, these students had previously been receiving the services when the parent requested the impartial hearing.  An impartial hearing was necessary, however, because the DOE routinely takes the position that when the parents reject the recommendation on the IEP, they reject the entire recommendation – both as to the placement and the services.  At the impartial hearing, DOE disputes the obligation to provide related services.  When the resulting Order directs the services, DOE facilitates the parents' ability to obtain the required services through the issuance of RSAs.

58.     As noted, RSAs allow parents to obtain required services on their own at DOE expense.  In fact, RSAs are necessary in such situations because, as the students are attending private schools, the DOE cannot send its own staff into the schools to provide the service. Rather, the schools and the parents collaborate to find a provider for the service through use of the RSAs.

59.     The use of RSAs is also appropriate for students attending DOE public schools. This is particularly true when the DOE has shortages of regular staff to provide the related service, such as occupational therapy, or is unable to secure a contracted vendor to come into the

school.  RSAs enable parents to secure services for their children outside of school.  The use of RSAs was authorized in the <u>Jose P.</u> litigation and Navigant correctly determined that DOE satisfies its obligations in these situations through the issuance of an RSAs.  Issuance of RSAs for non-shortage areas for children attending public schools is also appropriate, as parents can use the RSAs to obtain services on their own.

**Conclusion**

60.   Despite DOE's interpretative differences with Navigant, DOE is continuously seeking ways to improve its performance.  From the foregoing, four salient points are clear.

61.   First, that despite plaintiff's unsupported suggestion to the contrary, Orders and Action Items are, in fact, being implemented – the DOE satisfied the first benchmark for service action items, barely missed the benchmark for service orders and would have satisfied the first benchmark for payment action items and orders but for an interpretation dispute with Navigant -- and children and their parents are not being deprived of ordered services or payments.

62.   Second, that DOE has several good faith disputes with Navigant regarding its interpretation of the Stipulation, and that Navigant has imposed obligations on DOE that are not authorized by the Stipulation, ignore the established processes by which payment action items are processed, fail to account for the purpose of the directed action item, and ignore the implications for DOE's resources.

63.   Third, that Navigant's reporting regarding DOE's failure to meet the first benchmark for Timely Implementation of Service Action Items and Payment Orders and Action Items is due solely to DOE's inability to satisfy Navigant's added requirements.

64.   Fourth, that notwithstanding these good faith disputes, DOE has engaged in substantial dialogue with Navigant, has continuously sought to modify its procedures to satisfy

Navigant's requirements and to improve its performance and, in fact, has improved its performance.

65.     The Court should reject Navigant's interpretations and, in so doing, find that DOE complied with the first benchmark.  Even if the Court accepts these interpretations, as set more fully in the accompanying memorandum of law, under the circumstances present here there simply is no basis for the appointment of a special master, especially one with the broad and expansive powers sought by plaintiffs.

Accordingly, plaintiffs' motion should be denied.

Dated: New York, New York
       January 24, 2011

JUDY NATHAN