

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

LV, *et al.*,

                                       Plaintiffs,

    - against -

NEW    YORK    CITY    DEPARTMENT    OF
EDUCATION, *et al.*,

                                     Defendants.

------------------------------------------------------------------------x

03 CV 9917 (LAP)

**DECLARATION
OF SAPNA KAPOOR
IN OPPOSITION TO
PLAINTIFFS' MOTION
FOR THE
APPOINTMENT OF A
SPECIAL MASTER**

      **Sapna Kapoor** declares under the penalties of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

    1.      I am the Director of the Impartial Hearing Order Implementation Unit. I have held that position since January 2018.  I was the Associate Director of the Unit as of June 2015. I am familiar with the facts set forth herein and submit this declaration in opposition to Plaintiffs' motion for appointment of a special master.

**Implementation of Impartial Hearing Orders**

    2.      The process of implementation starts with the issuance of an order by an Impartial Hearing Officer.  The order is uploaded into the Impartial Hearing System, and transmitted by overnight feed into the Decision Action Item Tracking System ("DAITS").  Generally, the order must be "unpacked" by staff in the Impartial Hearing Order Implementation Unit ("Implementation Unit" or "Unit") before steps can be taken for implementation.  That is, someone must review the order in detail and determine the specific obligations (referred to as "action items") to be implemented, as well as each item's deadline for implementation.  In some cases, an order will refer to a prior Individualized Education Program ("IEP") or order, in which case the staff

must review that document to determine the details of the specific action items. Each action item is entered into DAITS together with the deadline for implementation as established by the Settlement in this case.

3.      Each action item is assigned to an implementation liaison for handling, with guidance from an implementation manager about implementation steps and documentation required for compliance.  Information and documentation must be uploaded into DAITS to demonstrate implementation of the action item or steps taken towards implementation.

4.      For payment action items, staff in the Implementation Unit are responsible for implementation.  For service action items, some items are assigned to Unit staff, but most are assigned to specific "implementation liaisons" in DOE offices outside the Unit.  For example, if the action item involves busing, it is assigned to a person within the DOE's Office of Pupil Transportation.  If the action item requires service(s) to be provided to a student in a DOE school, it is assigned to a staff member at the DOE Borough/Citywide Office responsible for working with that school, who then works directly with the school. If there is a requirement to conduct an IEP meeting, the school or the Committee on Special Education ("CSE") would be instructed to conduct the meeting and inform the Implementation Unit that the meeting had been conducted and provide the documents, such as the IEP, which demonstrate compliance.

5.      Managers within the Implementation Unit oversee implementation of  service action items and are responsible for following up to ensure that an action item is completed, and that the proof of implementation is uploaded into DAITS. For example, if the action item requires that an IEP meeting be held, the new IEP must be uploaded into DAITS as proof of implementation.

6.      On a daily basis, the implementation managers also enter each order received into a spreadsheet that facilitates tracking and oversight. The implementation managers are also responsible for the ongoing monitoring of action items that are due to determine whether the action item has been implemented and documented. Implementation managers and other staff in the Unit regularly answer inquiries from attorneys, parents and advocates and provide direct support to implementation liaisons on more complicated cases.

7.      Implementation of action items is a multi-step and time-consuming process. For payment action items, this is not simply a matter of issuing a check. Rather, a number of steps are required to ensure that the DOE makes the proper payment to the proper party.

8.      There are essentially two types of payment action items: (1) the DOE is required to reimburse the parent for an expenditure of money; and (2) the DOE is required to pay a vendor or school directly for the provision of services or tuition. The first category is referred to as reimbursement; the latter is referred to as prospective payment—even if the payment to the vendor is for services already provided before the issuance of the order.

9.      Once a payment action item is assigned to an Implementation Unit staff member, if the DOE has all the information and documentation needed to make a payment, the action item can be authorized for payment. The payment specialist must assess whether documentation produced at the hearing is sufficient to authorize a case for payment or if additional information/documentation is needed.

10.     A reimbursement case generally requires the payee's name and Social Security number, verification of the social security number by the New York City Comptroller; documentation verifying the precise sum that the parent or payee paid, such as cancelled checks, or credit card statements; and proof of enrollment in a school or other invoice from the vendor.

11.     If a reimbursement payment is for pendency (the entitlement to continue to receive the child's last agreed upon placement/services during the pendency of the due process case), the DOE may not make full payment up front. Pendency reimbursements are paid in increments even if the parent has paid tuition for the entire school year. This is done to ensure that, as much as possible, pendency payments will cover but not extend beyond the pendency of the case.  Thus, for pendency, it may be necessary for the Unit to make several payments over the course of the school year.

12.     For prospective payment cases, the DOE must have the name of the vendor or school to be paid, together with a Social Security number or taxpayer identification number, which must be verified by the Comptroller if the vendor is new to the City's payment system, and the rate for the service.  To pay a school, a contract or affidavit stating the amount of tuition owed is also required. Once that information is in place, the Implementation Unit can authorize payment.

13.     For pendency prospective payments of tuition to a school, the Unit makes periodic payments.  For final tuition orders, one payment is made for each semester of the school year.

14.     For other prospective payment cases for recurring services such as tutoring, the Implementation Unit authorizes the case for payment for the period allowed by the order. Invoices for authorized services are mailed or hand delivered to the Implementation Unit for payment. When invoices come in to the Implementation Unit, staff must allocate payment to the specific payment action item that has been established.  This can be time-consuming when, as is often the case, there is more than one order for the same service for the same student, or multiple services ordered for one student.  The Implementation Unit must allocate the invoice and payment to the correct action item or the particular order that awarded the service. If a parent changes a provider, the prior authorization must be closed out, and a new authorization must be established for the new

vendor. If there are multiple vendors providing service for a single service, each vendor must be authorized for a particular portion of the mandate. If the allocation initially created by the Implementation Unit does not match the actual usage by the parent, the authorization must be adjusted.

15.     As a matter of internal controls, to make a payment, one staff member must create an authorization, and a different staff member must separately process the payment, both reviewing the relevant information to ensure accuracy. An additional approval is required for prospective payments in excess of $25,000. Each of these steps takes time for staff in the Implementation Unit but are necessary to ensure that the DOE makes proper payments.

16.     When the DOE is not in possession of information necessary to implement an action item, as is frequently the case for payment action items, in accordance with the Settlement in this case, the DOE must make "substantial attempts" to obtain the necessary documentation from the parent, parent's attorney, and/or the vendor, as applicable.  See Nathan Declaration at 10.

17.     The need for detailed information in order to make payments is exemplified in how the DOE responded to a particular vendor's request for payment. Exhibit V to the moving Declaration of Rebecca Shore (dkt. no, 208-22) refers to a list of invoices that were claimed to have not been paid. We subsequently made efforts to obtain sufficient and clear information about the amounts that were owing and the orders/action items to which they related, including to confirm which prior DOE payments corresponded to each service.  The provider thereafter submitted sufficient information to facilitate payment of the items that were in fact outstanding.

18.     I am advised that Plaintiffs' papers also refer to a separate list of 233 invoices from a single service provider that allegedly had not been paid. The Implementation Unit worked with the provider to sort through the list of invoices, as is often necessary due to the vendor's submission

of invoices for services already paid or not otherwise chargeable to the DOE, and identified additional payments to be made. Where individual cases are brought to the attention of the Implementation Unit, the Unit reviews the request and works to resolve the issue.

19.     For service action items, the necessary steps for implementation vary depending on the nature of the DOE's obligation. In many instances, multiple action items are dependent on each other. For example, an order may require additional assessments of the student and, once the assessments are completed, for a new IEP meeting to be scheduled. Each of these results in separate action items that are separately assessed for implementation.

**Increase in Number of Orders and DOE's Response**

20.     I am informed that when the Implementation Unit was first established in 2011, it consisted of five staff -- a director, two implementation managers, a payment liaison, and a billing specialist. Part-time staff also provided assistance in implementation of orders. In 2011, DOE was processing fewer than 2,000 orders per year, by Navigant's count.

21.     Over the past several years, the number of orders has grown dramatically. In fiscal year 2016, the Unit processed 2518 orders, in fiscal year 2017, the number increased to 3446, in fiscal year 2018, to 4,842 and in fiscal year 2019, the number was 6,794. Pendency accounts for over fifty percent of all orders processed by the Unit.

22.     To meet the increased workload created by the drastic increase in orders, the DOE has increased the headcount of the Implementation Unit over time. I am advised that in 2012, the Unit expanded to eight staff; in 2015, DOE created the Associate Director position which I filled. In 2017, the DOE increased the headcount again to a total of nine full-time staff, to add an additional billing specialist to the team to support the increasing number of payment obligations.

In addition to full-time staff, the Unit continued to receive support from part-time and temporary personnel.

23.     Plaintiffs suggest in their papers that DOE has not taken any action to address the increased number of hearing orders and the resulting backlog in implementation.  Throughout 2018 and 2019 we used part-time and temporary staff to address the ever increasing number of orders. And, in 2019, the DOE increased the permanent headcount of the Implementation Unit.  I have also received implementation assistance from staff in the DOE's Special Education Office and Division of Financial Operations.

24.     In the spring semester 2019, a former DOE employee worked part-time on service cases, provided his expertise in implementing some more challenging cases. Part-time staff also provided after-school support to read orders and enter the obligations into DAITS (a process referred to as "unpacking" an order).

25.     In April, 2019, the Unit again increased in size, to a full time headcount of 11, increasing from 5 to 7 personnel assigned to payment obligations.  In August, 2019, the DOE increased the size of the Unit again, to a full time headcount of 14, adding 2 additional staff to support service obligations and one additional payment associate. The DOE is completing the hiring for the 14th person; the other two new positions have been filled.

26.     I am informed that the DOE is currently increasing the size of the Implementation Unit by an additional six staff, including another Associate Director.

27.     As the staffing of the Implementation Unit continues to increase, the Implementation Unit will have increased capacity to monitor service items for implementation and process payment orders consistent with the timelines of the Settlement.

**Process Enhancements**

28.     In addition to increasing headcount, the Unit has taken other steps to help expedite the processing of payment orders.  For the 2018-2019 school year, the Unit changed its standard for payment of tuition pendency payments – instead of making payments in three month increments, it now makes payments in six month increments. This change allowed employees to authorize and approve a payment approximately twice per year instead of every three months, thereby reducing the amount of work necessary to make a payment. For the 2019-2020 school year, tuition payments pursuant to pendency will be authorized for the full year initially, rather than for only a few months at a time; thereafter only one employee will need to approve the periodic payments, reducing the number of staff needed to effectuate each payment.

29.     The Unit has also identified a significant technical enhancement that will expedite payment to vendors for services rendered.  Currently, vendor payments are processed manually by Implementation Unit staff. I am informed that the DOE intends to do necessary programming to effectuate an enhancement that will allow certain vendors to submit invoices electronically though the DOE's vendor portal; the invoices will then be matched against the DAITS authorization and then paid. I am further advised that this enhancement will take about six months once programming begins. This should significantly reduce the amount of work handled by the Implementation Unit and allow payments to be made more quickly upon submission of invoices.

30.     In March 2019, the Implementation Unit began work to enhance the automated emails generated by DAITS. These emails are used to inform a vendor how to invoice the DOE for services provided pursuant to an Order. The template of the email did not contain sufficient information for the vendor (or for Navigant). Accordingly, the Unit worked to update the auto-generated email to vendors by programming DAITS to electronically include in the email

8

information about the particular service for which the vendor would submit invoice. The enhancement was launched this month and will eliminate the need for implementation staff to write a separate email to a vendor describing the details of an authorization and invoice requirements.

31.     In response to requests from Plaintiffs' counsel, the Unit took additional steps to address payments that might have been delayed. In May 2019, the Implementation Unit contacted the four largest attorney firms representing families to obtain service provider and rate information so that the Implementation Unit could authorize their action items for payment. As the firms responded with this information, the Implementation Unit authorized these cases for payment and then conducted follow up with the vendors for invoices. In June and July 2019, implementation managers also conducted outreach to the largest parent advocate and attorney firms to address outstanding reimbursements. Responses were assigned to payment staff to authorize and resolve any outstanding balances.  The Unit also created shared mailboxes, so that documentation for payments can be more easily accessed by multiple staff members, rather than a single employee. In June 2019, DOE updated its public website with further detailed instruction about payment cases.

32.     The Implementation Unit recognizes its obligation to implement impartial hearing orders as well as the importance of doing so in a timely fashion.  I will continue to work closely with members of the Unit and others in the DOE to address this important responsibility.

Dated: New York, New York
       October 31, 2019

Sapna Kapoor