

## Advocates for Children of New York
*Protecting every child's right to learn*

October 15, 2024

<u>Via ECF</u>

Hon. Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Board of Directors**
Kimberley D. Harris, *President*
Paul D. Becker, *Treasurer*
Eric F. Grossman, *President Emeritus*
Carmita Alonso
Matt Berke
Whitney Chatterjee
Matt Darnall
Jessica A. Davis
Brian Friedman
Jamie A. Levitt, *past president*
Maura K. Monaghan
Jon H. Oram
Jonathan D. Polkes
Victoria Reese
Ashish Shah
Misti Ushio
Veronica M. Wissel

**Executive Director**
Kim Sweet

**Deputy Director**
Matthew Lenaghan

Re:   *L.V., et al. v. New York City Dep't of Educ., et al.*, No. 03 Civ. 9917

Dear Judge Preska,

We represent lead plaintiffs and the class ("Plaintiffs") in the above-captioned action. Pursuant to Your Honor's Order issued on September 19, 2024, Dkt. No. 357, we write in response to Defendants' October 2, 2024 letter, Dkt. No. 358 ("October 2 Letter" or "Defs.' Ltr."). In the October 2 Letter, Defendants make various claims in support of additional procedural hurdles for implementation of payment orders, including the requirement that only parents and/or parents' counsel or advocates may (i) submit paperwork for reimbursement of services and (ii) communicate with the DOE about implementation of payment orders when the providers do not receive payment. Defendants' letter sets forth no evidentiary basis for imposing these additional measures. In addition, Defendants do not explain why the safeguards set forth in Plaintiffs' August 21, 2024 and July 11, 2024 letters are not sufficient to prevent fraud. Dkt. Nos. 355, 348. The DOE's new requirements unnecessarily burden parents and unreasonably delay the provision of services for students.

### I. Defendants' Reliance on the Emergency Regulation and the Guidance Memorandums to Justify Their Sweeping Allegations of Fraud Should Be Disregarded.

The DOE asserted at the May 30, 2024 hearing and in the October 2 Letter that the additional burdens that it is placing on parents originated solely from concerns related to orders for payment of Special Education Teacher Support Services ("SETSS") when the student is in a parentally placed private school for which the parent is not

seeking that the DOE pay tuition ("IESP SETSS cases"). But the DOE has imposed these additional burdens on parents in connection with implementation of *all* hearing orders requiring the DOE to pay for services, including orders to pay school tuition and for other related services such as speech and language, occupational, and physical therapy.

Defendants cite an emergency regulation that the state entered on an interim basis on July 15, 2024—the emergency Amendment of Section 200.5 of the Regulations of the Commissioner of Education Relating to Special Education Due Process Hearings, promulgated and adopted by the New York State Education Department ("NYSED") Board of Regents, and subsequently re-adopted (the "Emergency Regulation"). (*See* Def. Letter at 1-3). The Emergency Regulation removes the jurisdiction of impartial hearing officers over IESP SETSS cases. In explaining the need for the Emergency Regulation, the state stated that the IDEA requires school districts to provide these services, and when the school district does not pay for them, the school district must do so without a hearing.[1] The Emergency Regulation applies only to requests for payment of SETSS for students with IESPs in which there is *not* an order or hearing, which therefore were not subject to the scrutiny of a hearing officer.

Notably, on October 3, 2024, the Albany County Supreme Court issued a temporary restraining order ("TRO") in *Agudath Israel of America et al. v. New York State Board of Regents et al.*, Index No. 909589-24, staying enforcement of the Emergency Regulation. A copy of the TRO is appended to this letter as Exhibit 1. The TRO specifically states that the Emergency Regulation is suspended pending the hearing and determination of the petitioners' application for a preliminary injunction in January 2025. Thus, Defendants' reliance on the Emergency Regulation and the accompanying Guidance Memorandum to justify the imposition of additional burdens is misplaced.

In any event, the Emergency Regulation addresses only those IESP service cases where the school district must pay for services without a hearing; it is not intended to extend to hearing orders. Defs.' Ltr. Ex. 3 at 2. Without a hearing, NYSED recognized, the DOE could conduct some level of scrutiny of the requests for payment for services. The NYSED memorandum cited by Defendants specifically acknowledged: "[s]chool districts that provide payment for IESP services obtained by parents, however, are entitled to impose internal controls to ensure that requests for services were requested by the student's family, that payments are only made to providers who possess appropriate certification, and that rates accurately represent the cost of service provided (i.e. fair market value)." Defs.' Ltr. Ex. 3 at 3. In contrast, the hearing orders that are subject to *L.V.* are the result of a hearing officer making an express finding that the ordered service and payment are appropriate after an examination of the evidence.

In other words, the now-stayed regulation and guidance upon which Defendants rely merely justifies the DOE's ability to scrutinize the requests for payments for SETSS for students outside of the hearing process. The Emergency Regulation is not evidence of pervasive fraud in the impartial

---

[1] *See* the NYSED Guidance Memorandum that accompanies the Emergency Regulation at 3, https://www.regents.nysed.gov/sites/regents/files/724p12a1revised.pdf.

hearing order implementation system; nor does it justify placing additional onerous burdens on parents to secure payments that a hearing officer has ordered.

### II. Defendants Present No Evidence of Systemic Fraud that Warrants the Burdens They Now Place on Parents

Despite your Honor's express instructions (Dkt. No. 357), and the request of the Special Master in his September 13, 2024 letter (Dkt. No. 356), Defendants have produced no evidence of systemic fraud that warrants the DOE's requirement that only parents or their attorneys (and not providers and schools) may communicate with the Implementation Unit to secure ordered payments to the providers and schools.

Instead, the DOE points to a handful of "potential frauds" that (1) were caught by a hearing officer and therefore do not justify an increased burden on parents in connection with implementation of an order, or (2) were requests for payments that were made by the parents themselves, and which therefore do not support prohibiting providers from communicating with the DOE's Implementation Unit concerning ordered payments. *See* Defs.' Ltr. at 2-3.

Defendants also point to Ms. Vladeck's letter to the New York City Office of Administrative Trials and Hearings ("OATH") dated November 1, 2023. Like Defendants' other purported justifications for these burdens, Ms. Vladeck's letter related only to hearing requests for SETSS for students with IESPs and not to all hearing requests. The letter announced that the DOE would be unilaterally limiting the rate for SETSS to $125 for *settlements* and as a default market rate for implementation of orders when an impartial hearing order did not specify the rate. (A copy of Ms. Vladeck's November 1, 2023 letter is attached hereto as Exhibit 2.) OATH found that Ms. Vladeck's request to convey her letter to all impartial hearing officers was "neither required nor appropriate." (A copy of OATH's November 3, 2023 response to Ms. Vladeck is attached hereto as Exhibit 3.) As OATH directed the DOE: "NYCPS attorneys may make appropriate motions to the presiding OATH IHO to seek the engagement of a student's representative family member at a hearing, to demand and examine the identity and qualifications of a provider, or to argue for a particular market rate." *Id.* at 2. OATH continued:

> OATH acknowledges that the November 1, 2023, letter expresses NYCPS's concerns with a variety of public policy and legal issues. NYCPS is free to hold those concerns, to express them, and to avail itself of all appropriate mechanisms, laws, and resources to address these concerns – including reporting potential misconduct, abuse, and fraud to the Department of Investigation. In the context of individual adjudications, however, OATH maintains, as noted above, that the appropriate manner for NYCPS to raise those concerns is with the individual OATH IHO within the context of the hearing. In that way, the questions may be assessed based on the law and facts relevant to that particular case and with appropriate notice to the other party.

*Id.* at 2-3. OATH's position is consistent with Plaintiffs' position that hearing officers are best positioned to assess whether a requested provider and the provider's rate are appropriate. Once



payment is ordered, the DOE should not impose additional burdens on the parent to secure implementation.

Finally, Defendants cite two court cases as supposed evidence of systemic fraud.[2]  Defendants first cite the sealed indictment in *U.S. v. Handler*, et al.  The indictment alleges a fraud by an owner of daycare agency against the New York City Administration for Children's Services and the United States Department of Health and Human Services—not the DOE.  In addition, the indictment contains no allegations relating to impartial hearing orders or implementation of hearing orders.  Even if the allegations did relate to impartial hearing orders, it is unclear how the acts of five criminal defendants[3] in 2022 warrant the imposition of an unreasonable burden on the tens of thousands of parents who require quick and easy implementation of their impartial hearing orders.  Defendants also fail to explain why the precautions that Plaintiffs set out in their August 21, 2024 and July 11, 2024 letters would not prevent the fraud alleged in the indictment.

Defendants also cite the New York County Supreme Court case *Yes I Can Services, Inc. v. New York City Department of Education*, Index No. 653398/2022.  Contrary to the Defendants' assertion that the court "granted a partial summary judgement in favor of NYCDOE," Defs.' Ltr. at 3, the decision Defendants attach merely denied without prejudice the *plaintiffs'* motion for summary judgment and, notably, *denied* the DOE's motion to dismiss.  Defs.' Ltr. Ex. 5 at 2, 3, n.1.  At issue were $30,000,000 of payments that a service provider claimed the DOE had not paid.  The plaintiff had filed its complaint in 2022 and motion for summary judgment in August 2023; the court issued its decision a year later in September 2024.  As a result, the court explained that it was "unsure which amounts for which [plaintiff] now seeks summary judgment are based on (i) invoices generated before the filing of the complaint, if any; or (ii) unpaid invoices that the City received and retained without objection for a sufficiently long period of time to support an account-stated claim." *Id*. at 3.  The court made no findings of fraud, and permitted the plaintiffs' claims for payment to proceed.   In addition, nothing in the decision suggests that this lawsuit involved a request for payment based on impartial hearing orders.  *Id*. at 3-4.

Plaintiffs agree that fraud should be prevented.  However, Defendants' new burdens on parents to secure implementation of hearing orders are not necessary or targeted to prevent fraud.  Plaintiffs' proposed precautions laid out in its earlier letters, and the process changes that the Special Master set forth in his September 13, 2024 letter, are sufficient for that purpose.

---

[2] Defendants' exhibits contain sections of text that were presumably highlighted by Defendants' counsel, rather than in the original document.  Plaintiffs respectfully request that the Court disregard the highlighting and give the highlighting no weight.

[3] The *L.V.* Defendants claim in their letter that the indictment names seven defendants, but the sealed indictment names only five.



### III. Process Changes

#### A. Increased Payment Amounts

Plaintiffs are pleased that the DOE has hired more staff for order implementation. *See* Defs.' Ltr. at 5. Plaintiffs also appreciate that the DOE is issuing more payments each month as measured in total dollar amount. *See id.* at 4-5. Defendants do not indicate, however, the underlying reason for this increase in payments, *i.e.*, whether the DOE is paying on a larger number of orders, whether the payments are to catch up on orders that were past due, or whether they are for orders that have only recently come due and were timely implemented. The Stipulation requires the DOE to meet specific benchmarks for timely implementation, meaning implementation of orders and action items within 35 calendar days of the order unless the order specifies another date. Stip. ¶¶ 4-11. For the past five years, the DOE has been timely implementing orders and action items at a rate of 10%, with many parents waiting months and sometimes years for payment and services. REDACTED Because the October 2 Letter just reports the top-line amount of money that the DOE has paid each month, without further detail or breakdown, Defendants' report does not indicate how many orders the DOE paid and how many orders and action items the DOE *timely* paid. Without that information, it is hard to understand what, if any, progress the DOE has made and whether the changes that Defendants attribute to the higher dollar amount of payments equate to more timely implementation of hearing orders.

#### B. Requirement of Parents' Social Security Numbers

The DOE's requirement for parents' Social Security Numbers contravenes state findings and city regulations. In 2009, the New York State Education Department prohibited the DOE from seeking taxpayer information from parents in connection with impartial hearing orders, as the payments are not taxable income. (A copy of that decision is attached as Exhibit 5.) The DOE's solution was to create a "substitute W-9" for parents to complete when they required the reimbursement, which used the parents' Social Security Number as the unique identifier. New York City Human Rights Law, however, prohibits discrimination on the basis of immigration and citizenship status. *See* https://www.nyc.gov/site/cchr/law/chapter-1.page#8-101. Because parents who are not documented do not have Social Security Numbers, the DOE's requiring a Social Security Number would bar those parents from receiving payment pursuant to hearing orders. It is unclear why the DOE is unable to use a student's unique OSIS number as the identifier for every student with an impartial hearing order, so that parents who are not documented would be treated equally.

#### C. Requirement of Loan Agreements

The Second Circuit has made clear that a school district can be ordered to pay school tuition so long as the parent has a legal obligation to pay the school tuition. *See E.M. v. New York City Dept. of Educ.*, 758 F.3d 442 (2d Cir. 2014). *How* the parent fulfils that obligation to the school is irrelevant.



In *E.M.*, the parent seeking an order to pay tuition was low-income, and the Second Circuit noted that "E.M. has not paid – and is likely unable to pay out-of-pocket – any tuition to the private school." *Id.* at 445. The Court emphasized, however, that the parent's Article III standing arose from the legal obligations of the enrollment contract with the school[4]:

> [P]laintiff has adequately demonstrated that, as a result of the Department's alleged failure to provide a FAPE, she has incurred a financial obligation to RFTS under the terms of the enrollment contract. Plaintiff's contractual obligation itself constitutes an "injury in fact" for Article III purposes, one that is "redressable" by the direct tuition payment she seeks.

*Id.* at 456. The Second Circuit then discussed the impact of the parent's loan with the school on the parent's standing to seek the tuition order, recognizing again the obligation arising from the enrollment contract requiring the parent to pay tuition. The Second Circuit explained that "if E.M. prevails on her claims, and is awarded funding from the Department, she will not receive a 'windfall,' . . . ; rather, she will merely repay a debt incurred as a result of the Department's allegedly inadequate IEP." *Id.* at 461 (citation omitted).

Other courts in this district also have rejected the DOE's argument that a loan should impact the DOE's obligation to pay an order for tuition. In *M.F. v. New York City Board of Education*, 2013 WL 2435081, *13 (S.D.N.Y. Jun 4, 2013), the Southern District of New York found "no reason to reduce tuition reimbursement or the retroactive direct tuition payment based on the loan." The Court explained that the loan "transaction is simply irrelevant to whether M.F. is entitled to a tuition remedy under the IDEA" because "parents should not be denied a tuition remedy merely because [*sic*] of their lack of financial resources to 'front' the cost of tuition." *Id.* at *13; *see also D.A. v. New York City Dept. of Educ.*, 769 F. Supp. 2d 403 (S.D.N.Y. 2011) (rejecting the DOE's argument that the "private school remedy is available only to parents with the financial means to pay").

Defendants' conditioning of implementation of ordered payments upon receipt of loan agreements when parents independently do not have the funds to pay usurps the role of the impartial hearing officer. Pursuant to the above caselaw, hearing officers are responsible for determining whether a parent has standing to bring a claim for payment against the DOE, which includes confirmation that the parent has a legal obligation to pay under the enrollment contract. Hearing officers also have the authority to determine whether the requested amount for tuition is proper. *See, e.g.*, *D.A.*, 769 F. Supp. 3d at 430 ("Hearing officers and reviewing courts, however, already possess ample authority to reject or reduce tuition funding or payment requests where there is collusion between parents and private schools."). For that reason, enrollment contracts are entered into evidence at the hearing. Once the hearing officer has ordered that the DOE pay, the DOE's only options are to appeal the order or pay the ordered amount. The DOE already requires the parent to submit proof of payment and the enrollment contract as a condition of order implementation. The DOE cannot avoid the hearing officer's order by requiring proof of the documents as to *how* the parent obtained the funds

---

[4] The Second Circuit expressly distinguished the case cited by Defendants, *Emery v. Roanoke City School Bd.*, 423 F.3d 294 (4th Cir. 2005). *See E.M.*, 758 F.3d at 455, 461.



to pay when the impartial hearing officer already has found a legal obligation for the parent to pay for the tuition or services. *See* Dkt. No. 258.

        D.  Website Updates

Defendants claim that "[f]ollowing recent website updates, these [payment] processes are clearly set forth online." Defs.' Ltr. at 4. Contrary to Defendants' representations, the website does not list the documents that are required for implementation, or the process that parents must follow in order to secure implementation of a payment or service order. Instead, after listing the multiple offices involved in the implementation process, the website merely provides a link to the "Help Us, Help You" guide. As Plaintiffs discussed in their July 11, 2024 letter, the guide does not reflect the requirements that the Implementation Unit has imposed on parents for implementation of payment orders. For example, the guide still states that providers should provide the documentation for implementation, while the Implementation Unit is now insisting that only parents or their attorneys may communicate with the DOE about implementation. *See, e.g.*, Dkt. No. 348 at 1-3.

Defendants report that they are working on a customer support platform. As Plaintiffs have discussed in prior letters, the DOE has intentionally excluded Plaintiffs' counsel from any input on the customer support platform. *See* Dkt. No. 355 at 3. To the extent Defendants intend to engage parents directly without Plaintiffs' Counsel's participation in connection with Defendants' work to implement Your Honor's Order in this litigation—as Defendants have stated their intent to do—this raises concerns of *ex parte* communications with a represented party, as Plaintiffs' counsel represent the Class.

        Respectfully submitted,

        /s/ *Rebecca C. Shore*
        Advocates for Children

cc: All Counsel of Record (via ECF)