# EXHIBIT 2

**NYC Public Schools**
Chancellor David C. Banks

**Liz Vladeck**
*General Counsel*

Deputy Commissioner/Special Education Hearings Division Noel Garcia
NYC Office of Administrative Trials and Hearings
*Via email*

General Counsel Dan Morton-Bentley
New York State Education Department
*Via email*

November 1, 2023

Dear Deputy Commissioner Garcia and General Counsel Morton-Bentley:

I write on behalf of New York City Public Schools ("NYCPS") to (A) provide an administrative update on the volume and processing of due process complaints ("DPCs") brought under the Federal Individuals with Disabilities Education Act ("IDEA") and New York State Education Law 4401 et seq., and (B) advise you of new litigation policies that NYCPS has adopted given the significant challenges these cases continue to impose. To ensure transparency, I have copied members of the parents' bar and other parent/family representatives on this letter.

    A.    <u>Administrative Update</u>

This is the second full school year of managing due process legal cases with the NYC Office of Administrative Trials and Hearings ("OATH") as a standing tribunal. I thought it important to share the following updates:

In school year 2014 a total of **6,026** due process complaints were filed. At that time, on average, cases were completed (meaning processed and either resolved or settled or with issuance of a hearing order) in **180 days**.

Starting in school year 2017, case filings began to grow at a rate of about **23-25% each year**, year over year. Consequently, case processing time slowed down and various other challenges arose caused by the explosive volume. In school year 2021, a total of **14,265** due process cases were filed. By November of 2021, there were over 11,000 cases just awaiting assignment to an impartial hearing officer. Case completion time had jumped by that point up to an average of **282 days**.

OATH fully opened its doors in July 2022 and the results for all cases from that first year are dramatic:
- As of August 31, 2023 more than **82%** of all cases filed in school year 2023 were closed. As of the date of this letter that number is **90%**.
- Average case completion time for school year 2023 dropped down to **145 days**, the lowest in more than ten years.
- September is when over 50% of total annual cases are typically filed. Yet despite the crush of new filings for school year 2024 (**more than 15,000** as of today) our team has kept case assignment moving. It is taking us fewer than 4 days to docket cases and there is no backlog.

November 1, 2023
Page | 2

When we consider the record number of case filings last year – **22,056** in school year 2022 (which almost **quadruples the 5,647** filings just ten years earlier in school year 2013) – what has been achieved is that much more impressive. I thank you and your teams for your diligent work to improve this important process for New York City families. It is rare to see such compelling progress over such a short time in government, and it wouldn't have been possible without your and your teams' collective efforts.

>   B.   Concerns Prompt Changes to NYCPS Litigation Policy for IESP Due Process Claims

NYCPS has adopted certain practices in our litigation posture that I wish to share with you and families' representatives. These changes and the reasons for them are described below. I respectfully request that you advise your impartial hearing officers (IHOs) that these measures represent NYCPS policy, and not the decisions of our individual attorneys and representatives. These measures are primarily for IESP cases; we may use them in IEP hearings on a case-by-case basis.

In short, NYCPS will seek, in all IESP cases, to verify that parents are involved and informed about their child's case; that special education providers who will serve their children are certified special education teachers; and that reasonable rates are paid for these services. What follows is an explanation for why these policies are necessary to protect against abuse of public funds.

As we've made strides in improving the mechanics of due process, we have discovered that the nature of the cases driving the explosion in filings has changed. Historically, "due process cases" are brought when a family claims NYCPS has failed to offer a "Free, Appropriate Public Education" ("FAPE") sufficient to meet the needs of their child with disabilities, and they therefore seek their own remedy, the cost for which NYCPS is responsible. In these cases, the required programs or services are memorialized in the child's "Individualized Education Program," or "IEP," created pursuant to the IDEA.

The claims driving exponential case growth, however, are not IDEA-based challenges to NYC provision of FAPE. Instead, they involve claims for special education services by families who are *not* seeking a public education, but rather special education services in their private school setting. New York State allows families who choose to enroll their children in private school at their own expense to seek implementation of their "Individualized Education *Services* Plan," or "**IESP**." These "equitable services" cases rely on the same due process machinery as IEP cases. By definition in these cases, parents do not claim that New York City schools failed to provide their children with an appropriate public education.

About three years ago, NYCPS staff who work on these cases began noticing that "IESP" case filings were increasing rapidly. During school year 2021, systems were updated to track due process claims by type (i.e., IEP or IESP). Here is what that tracking shows:

- In school year 2022, the first year of this tracking, IESP cases were **44%** of all case filings. That is, 44% of *a new record case volume: **17,883***.
- In school year 2023, IESP cases comprised **54%** of all case filings. Again, 2023 was a *record-breaking year with **22,056** total DPC filings*.
- As of the date of this letter, over **15,000** cases have been filed since July 1st for school year 2024 (more than the total of all cases for the entire school year 2021). IESP cases already constitute **57%** of that number, although filings in these cases typically **do not begin until September 1st** (IEP cases are filed for the current year starting July 1).

November 1, 2023
Page | 3

With the growth in case volume, of course, comes growth in costs. Final due process case costs for FY 2023 are still being assessed, but already they have surpassed **$1.1 BILLION** in funds required to be paid by the City of New York.

In the course of our work, issues have emerged that raise serious concerns with many IESP cases.

At the top of that list is the quality of services in SETSS ("Special Education Teacher Support Services") cases. SETSS is an NYCPS innovation where, by having special education teachers spend time in mainstream classrooms for limited periods to work with students who need a bit extra, students with disabilities are able to remain in their general education class. SETSS teachers also consult with the main classroom teacher, to help build their skills.

In the New York City Public School system, SETSS is recommended for **fewer than 10%** of NYCPS' total student population with IEPs.  Moreover, SETSS recommendations for those students receiving a public education are rarely for more than 4-5 hours a week, as needs more intensive than that would likely require more intensive interventions, such as a special class.

Our concerns have been compounded by the number of cases where we have encountered the following (these are not isolated incidents):

- Evidence adduced through hearings that the services provided for the child by private enhanced rate providers are of poor or even incomprehensible quality and not aligned with the goals of the IESP.
- The sheer number of students with IESPs in many schools (far above even NYC's generally high rate in its public schools of 22% of the total student body who have IEPs).
- Reports from our CSEs of services agencies establishing a consistent presence in certain schools and prompting parents to sign up to have the agency seek (indistinct) services and pursue due process on parents' behalf.
- Communications between NYCPS staff and the family member of the child named in the DPC where the family is unaware of the fact a case was filed on their child's behalf.
- The submission of documents by attorneys or agencies that are specifically required by law to be transmitted by parents.
- Filing by *more than one attorney* of identical cases for the same child and the same school year.
- The aggressive involvement of service agencies themselves in DPC proceedings, even though they are NOT parties in interest to these matters and have no legal standing or entitlements.

The concerns prompted by these issues are further compounded by press reporting and a criminal indictment in the Southern District of New York that raise suspicions that some cases may be fraudulent, and that taxpayer dollars may be flowing to parties who are not entitled to them by law, and for purposes other than the special education services for which those funds are meant to pay.  A recent report by the NYC Comptroller reinforces that fraud is a real risk in this space.

### Controls and Quality Assurance Measures in the DPC Process
Based on these challenging circumstances, I have directed our teams to take measures at all stages of the litigation process to enact specific, basic, low-bar controls and quality assurances. NYCPS has an obligation to ensure that IESP cases are legitimate, that children prescribed services are receiving them, and – most of all – that those services indeed *provide children with what they need to succeed* in school.

**The three basic controls we are implementing for IESP cases are:**

1. **Family Engagement.** NYCPS will insist upon actual engagement with a family member whose child the case is on behalf of, whether that is participation in a resolution meeting, a phone call, initial hearing appearance or by some other means.[1]
2. **Qualified Providers.** NYCPS will demand identification of the individual proposed to actually provide services to the child and confirmation that individual is a certified special education teacher who has undergone the same clearance process NYCPS requires of its own teachers and providers.
3. **Establishment of a Fair Market Rate for Services.** As of the current school year, NYCPS has set a maximum "fair market rate" of $125 an hour for an independent special education teacher providing SETSS. Given the rapid growth in demand over such a short period for SETSS, and in response to the many IHO DPC decisions calling on NYCPS to determine a "fair market rate" for ordered services, NYCPS commissioned an independent study of the new market for special education teachers. Using NYCPS pay and compensation for special education teachers, Bureau of Labor Statistics data, and the Consumer Price Index, the study demonstrates that $125 an hour is more than fair compensation for providing SETSS to one child pursuant to their IESP.[2]

We will apply these controls both in the resolution and implementation phases[3] of litigation. At the hearing stage, I respectfully request that you advise your IHOs to give serious consideration to NYCPS position on these issues.

In some cases, these measures may slow down certain parts of the process, which will understandably cause some frustration for parties who genuinely need a remedy for their children. The scope and breadth of the challenges presented here require a consistent approach and necessitate the baseline risk management measures laid out above. I regret this inconvenience and frustration, and we'll do everything we can to expedite outcomes for families within the constraints of these necessary controls.

I thank you for your commitment to ensuring the best for all NYC students and look forward to continuing our common efforts to do so.

Sincerely,

Liz Vladeck

cc:    Special Education Due Process Parents' Bar; Advocacy and Community Organizations.

---

[1] It has long been practice and expectation that families appear at IEP hearings. The fact that most hearings are virtual greatly reduces the burden on families that might otherwise be involved with hearing participation.
[2] In NYC public schools SETSS providers work with groups of children; each DPC involves service hours for one child.
[3] In other words: NYCPS will offer to resolve SETSS claims for no more than $125 an hour in resolution meetings, will request that IHO Orders not exceed $125 an hour, will settle cases for no more than this amount, and will use it as the default rate for implementing orders, whether pendency or final orders. Note that this practice, adopted for operational purposes, is not a concession that pendency is applicable in the same manner or extent as IDEA claims.