# Exhibit A



# L.V. v. D.O.E.

# 03 Civ. 9917 (RJH)

# Stipulation and Agreement of Settlement

# Independent Auditor's Post Corrective Action

# Fifty-Eighth Quarterly Report

## July 29, 2025



**Table of Contents**

I. Introduction ................................................................................................................. 1

II. Executive Summary and Statistical Overview .................................................................. 2

III. Implementation of Service Action Items by Category ....................................................... 4

IV. Implementation of Payment Action Items by Category ..................................................... 5

V. Comparison of Timely Implemented Orders and Action Items ......................................... 7

VI. Limitations ................................................................................................................. 8

VII. Conclusion ................................................................................................................. 8

**Appendices**

A. List of Post Corrective Action Fifty-Eighth Quarter Unimplemented Orders
B. List of Post Corrective Action Fifty-Eighth Quarter Timely Implemented Orders
C. List of Post Corrective Action Fifty-Eighth Quarter Uncounted Orders
D. Post Corrective Action Fifty-Eighth Quarter Orders Grouped with Related Action Items
E. List of Post Corrective Action Fifty-Eighth Quarter Unimplemented Action Items
F. List of Post Corrective Action Fifty-Eighth Quarter Timely Implemented Action Items
G. List of Post Corrective Action Fifty-Eighth Quarter Uncounted Action Items



I. **Introduction**

On December 12, 2003, Advocates for Children of New York ("AFC") and Milbank, Tweed, Hadley & McCloy LLP ("Milbank") filed a class action, L.V. v. D.O.E. 03 Civ. 9917 (RJH). The class was comprised of parents of special needs children who alleged that while they had obtained a favorable order from an Impartial Hearing Officer against the New York City Department of Education ("DOE") or stipulation of settlement placed on the record at an impartial hearing with the DOE, the DOE failed to obtain full and timely implementation of such order or settlement.

On December 11, 2007, the Corporation Counsel of the City of New York on behalf of the DOE and AFC and Milbank on behalf of Lead Plaintiffs and Class[1] ("Plaintiffs"), referred to collectively herein as ("the Parties"), signed a Stipulation and Agreement of Settlement ("Stipulation") in connection with L.V. v. D.O.E. 03 Civ. 9917 (RJH). Pursuant to the terms of the Stipulation, Daylight Forensic & Advisory LLC ("Daylight") was appointed as Independent Auditor on March 27, 2008. On May 9, 2008, the DOE formally engaged Daylight to commence the independent audit.

The Stipulation requires the Independent Auditor to generate reports concerning the DOE's implementation of Orders and Action Items for all Quarterly Measurement Periods (each a "Quarterly Report") and Benchmark Measurement Periods (each a "Benchmark Report").

Guidehouse[2] issued the following reports in conjunction with the Injunctive Relief Subclass: (1) Gap Period Report (dated August 6, 2008); (2) Eighth Quarterly Report (dated January 9, 2009); (3) Eighth Quarterly Report and Eighth Benchmark Report (dated June 11, 2009); and (4) Post Corrective Action[3] Eighth Quarterly Report (dated April 9, 2010).[4]

Guidehouse issued reports in conjunction with the Injunctive Relief Subclass, including the Post Corrective Action ("PCA") First Benchmark Report dated August 13, 2010, as well as reports for the PCA Third Quarter through the PCA Fifty-Seventh Quarter. Guidehouse issued the final PCA quarterly reports during the time period of August 13, 2010 through February 7, 2025.

---

[1] Pursuant to Section I.1.f. of the Stipulation, "Class" is defined as the Compensatory Relief Subclass and the Injunctive Relief Subclass.

[2] On October 11, 2019, Guidehouse LLP completed its acquisition of Navigant. We refer to Navigant and Daylight as 'Guidehouse' for consistency purposes under the terms of this engagement. Guidehouse continues to perform according to the terms of the Engagement Letter, using the same analysis and methods and without changes to the schedule, price, or level of effort.

[3] Pursuant to Section III.10.a. of the Stipulation, "If the DOE fails to meet the Eighth Benchmark or Eighth Benchmark at the required date…the DOE must, within three months of issuance of the final Benchmark Report notifying the parties of the missed benchmark, formulate and implement a Corrective Action Plan designed to correct the problems that caused the DOE to miss the benchmark at issue."

[4] Pursuant to Sections I.1.r. and I.1.h of the Stipulation, "Injunctive Relief Subclass" is defined as the class of all persons who, on or subsequent to the Commencement Date of December 12, 2003, (1) obtain or obtained a favorable Order by an Impartial Hearing Officer against the DOE or stipulation of settlement placed on the record at an impartial hearing with the DOE and (2) fail or failed to obtain full and timely implementation of such Order or settlement.



The current report focuses on Guidehouse's review of Injunctive Relief Subclass Orders and summarizes our analysis of the Total Orders and Total Action Items that were part of the post corrective action Fifty-Eighth Quarterly Measurement Period ("PCA Fifty-Eighth Quarter") and includes Orders issued between October 10, 2023 through January 8, 2024 with Action Item final due dates between November 14, 2023 through February 12, 2024.

The terms defined in Section I. Definitions of the Stipulation apply to the present report.

II. **Executive Summary and Statistical Overview**

During the PCA Fifty-Eighth Quarter, Guidehouse determined that the DOE Timely Implemented [5] 9.5% of Service Orders; [6] 9.0% of Service Action Items; 1.0% of Payment Orders;[7] and 1.8% of Payment Action Items during this timeframe.

The following table summarizes the counted PCA Fifty-Eighth Quarter Orders and Action Items by type of relief:

|  | Service Orders | Payment Orders | Service Action Items | Payment Action Items |
|---|---|---|---|---|
| **Timely Implemented** | 322 (9.5%) | 54 (1.0%) | 663 (9.0%) | 165 (1.8%) |
| **Unimplemented**[8] | 3,054 (90.5%) | 5,228 (99.0%) | 6,678 (91.0%) | 9,245 (98.2%) |
| **Total** | 3,376 | 5,282 | 7,341 | 9,410 |

---

[5] "Timely Implemented" is defined as an Order or Action Item that was implemented within the length of time specified in the Order or, if no such time is specified in the Order, within 35 days of issuance (of the Order itself or of the Order containing the Action Item), except that particular Orders or Action Items will also be considered to have been timely implemented for measurement purposes pursuant to the additional requirements included in Section I.1.ii. of the Stipulation.

[6] Pursuant to Section I.1.dd. of the Stipulation, "Service Order" is defined as an Order, or all Action Items within an Order that requires the DOE to take any action other than make a payment directly to a parent, private service provider, or private school.

[7] Pursuant to Section I.1.v. of the Stipulation, "Payment Order" is defined as an Order, or all Action Items within an Order, requiring the DOE to make a direct payment to a parent, private service provider, or private school.

[8] Pursuant to Section I,1. mm of the Stipulation, "Unimplemented" or "Unimplemented Order" is defined as an Order or Action Item that is found by the Independent Auditor to have not been Timely Implemented. Guidehouse assessed Action Items as Unimplemented when 1) there was no indication that implementation occurred or 2) the analysis determined that implementation occurred after the due date. Orders were deemed Unimplemented when one or more of the Action Items associated with the Order was determined to be Unimplemented.



In addition, Guidehouse determined that 31 Orders and 104 Action Items issued during the PCA Fifty-Eighth Quarter were Uncounted.[9] There were 1,486 Orders issued during the PCA Fifty-Eighth Quarter that did not include Action Items, such as Orders of Dismissal and Orders where the parent's relief was denied.

Further, Guidehouse identified 1,913 Orders (comprising 3,273 Action Items) and 173 additional Action Items where the DOE was not required to implement the Action Items because they were beyond the scope of review. These Action Items were beyond our scope of review for multiple reasons, including but not limited to:

- Situations where the parent refused an ordered service;
- Implementation performed pursuant to a prior Order; and
- Payment was made in conjunction with a previously analyzed Action Item.[10]

---

[9] Pursuant to Section I.1. ll. of the Stipulation, Orders or Action Items are deemed "Uncounted Orders" or "Uncounted Action Items," respectively, when an Order or Action item could not be Timely Implemented because:

    i. It required the DOE to take action that would either violate applicable law or is factually impossible;
    ii. The DOE had made a substantial showing of attempts to reach the parent and attempts to obtain compliance with the parent's obligations under the Order;
    iii. It required the provision of a DOE designated shortage area service which includes, inter alia, occupational, physical and speech therapy and where the DOE made a substantial showing that it offered the parent an appropriate substitute service within 35 calendar days of the issuance of the relevant Order or Action Item; and
    iv. The Order or Action item was timely appealed by the DOE.

[10] A complete list of these Orders and Action Items will be provided to the Parties.

3



### III. Implementation of Service Action Items by Category

Guidehouse reviewed the 7,341 counted Service Action Items and noted that the top three most frequently identified categories were Speech and Language Therapy (2,500 Action Items or 34.0%), followed by Occupational Therapy (1,790 Action Items or 24.3%) and Counseling (1,063 Action Items or 14.5%).

The categories with the highest percentage of Unimplemented Action Items with respect to the total number of counted Service Action Items within the category were Correspondence (99.2%), followed by Offer Placement (98.9%) and CSE Evaluation (97.4%).

The following table sets forth the top 10 Service Action Item categories based on the number of counted Action Items:

|   | Action Item Category | Total Counted Service Action Items | % Total Counted Service Action Items | # Timely Implemented by Category | % Timely Implemented by Category | # Unimplemented by Category | % Unimplemented by Category |
|---|---|---|---|---|---|---|---|
| 1 | Speech and Language Therapy | 2,500 | 34.0% | 211 | 8.4% | 2,289 | 91.6% |
| 2 | Occupational Therapy | 1,790 | 24.3% | 155 | 8.7% | 1,635 | 91.3% |
| 3 | Counseling | 1,063 | 14.5% | 74 | 7.0% | 989 | 93.0% |
| 4 | Physical Therapy | 461 | 6.3% | 38 | 8.2% | 423 | 91.8% |
| 5 | Transportation | 391 | 5.3% | 149 | 38.1% | 242 | 61.9% |
| 6 | Reconvene Hearing or Meeting | 320 | 4.4% | 11 | 3.4% | 309 | 96.6% |
| 7 | CSE Evaluation | 156 | 2.1% | 4 | 2.6% | 152 | 97.4% |
| 8 | Paraprofessional | 153 | 2.1% | 7 | 4.6% | 146 | 95.4% |
| 9 | Correspondence | 130 | 1.8% | 1 | 0.8% | 129 | 99.2% |
| 10 | Offer Placement | 87 | 1.2% | 1 | 1.1% | 86 | 98.9% |
|  | Remaining Categories with 85 or Less Action Items | 290 | 4.0% | 12 | 4.1% | 278 | 95.9% |
|  | TOTAL | 7,341 | 100.0% | 663 | 9.0% | 6,678 | 91.0% |

4



### IV. Implementation of Payment Action Items by Category

Guidehouse reviewed the 9,410 counted Payment Action Items and noted 7,746 Action Items categorized as prospective payments and 1,664 Action Items categorized as reimbursements. The top three most frequently identified categories of prospective Payment Action Items were Special Education Teacher Support Services (2,889 Action Items or 37.3%), followed by Tuition (1,288 Action Items or 16.6%), and Speech and Language Therapy (672 Action Items or 8.7%).

The categories with the highest percentage of Unimplemented Action Items with respect to the total number of counted prospective Payment Action Items within the category were Compensatory Services (100.0%), followed by Private Evaluations Ordered (99.7%) and Speech and Language Therapy (99.3%).

The following table sets forth the top 10 prospective Payment Action Item categories based on the number of counted Action Items:

| | Action Item Category | Total Counted Payment Action Items | % Total Counted Payment Action Items | # Timely Implemented by Category | % Timely Implemented by Category | # Unimplemented by Category | % Unimplemented by Category |
|---|---|---|---|---|---|---|---|
| 1 | Special Education Teacher Support Services | 2,889 | 37.3% | 25 | 0.9% | 2,864 | 99.1% |
| 2 | Tuition | 1,288 | 16.6% | 31 | 2.4% | 1,257 | 97.6% |
| 3 | Speech and Language Therapy | 672 | 8.7% | 5 | 0.7% | 667 | 99.3% |
| 4 | Compensatory Services | 652 | 8.4% | 0 | 0.0% | 652 | 100.0% |
| 5 | Occupational Therapy | 506 | 6.5% | 11 | 2.2% | 495 | 97.8% |
| 6 | SEIT Services | 487 | 6.3% | 11 | 2.3% | 476 | 97.7% |
| 7 | Private Evaluations Ordered | 318 | 4.1% | 1 | 0.3% | 317 | 99.7% |
| 8 | ABA Therapy | 177 | 2.3% | 8 | 4.5% | 169 | 95.5% |
| 9 | Counseling | 171 | 2.2% | 2 | 1.2% | 169 | 98.8% |
| 10 | Physical Therapy | 116 | 1.5% | 2 | 1.7% | 114 | 98.3% |
| | Remaining Categories with 96 or Less Action Items | 470 | 6.1% | 12 | 2.6% | 458 | 97.4% |
| | TOTAL | 7,746 | 100.0% | 108 | 1.4% | 7,638 | 98.6% |



The top three most frequently identified categories of reimbursement Action Items were Tuition (1,121 Action Items or 67.4%), followed by Special Education Teacher Support Services (85 Action Items or 5.1%) and Transportation (82 Action Items or 4.9%).

The categories with the highest percentage of Unimplemented Action Items with respect to the total number of counted reimbursement Action Items within the category were Special Education Teacher Support Services (100.0%) and Transportation (96.3%).

The following table sets forth the top three reimbursement Action Item categories based on the number of counted Action Items:

| | Action Item Category | Total Counted Payment Action Items | % Total Counted Payment Action Items | # Timely Implemented by Category | % Timely Implemented by Category | # Unimplemented by Category | % Unimplemented by Category |
|---|---|---|---|---|---|---|---|
| 1 | Tuition | 1,121 | 67.4% | 50 | 4.5% | 1,071 | 95.5% |
| 2 | Special Education Teacher Support Services | 85 | 5.1% | 0 | 0.0% | 85 | 100.0% |
| 3 | Transportation | 82 | 4.9% | 3 | 3.7% | 79 | 96.3% |
| | Remaining Categories with 79 or Less Action Items | 376 | 22.6% | 4 | 1.1% | 372 | 98.9% |
| | TOTAL | 1,664 | 100.0% | 57 | 3.4% | 1,607 | 96.6% |

6



## V. Comparison of Timely Implemented Orders and Action Items

Guidehouse identified a decrease in the percentage of Timely Implemented Orders and Timely Implemented Action Items in the PCA Fifty-Eighth Quarter. Guidehouse analyzed the statistics from the final PCA Fiftieth through the PCA Fifty-Seventh Quarterly Reports and determined that the DOE timely implemented, on average, 3.6% of Payment Orders, 3.8% of Payment Actions, 7.6% of Service Orders and 5.8% of Service Action Items. In the PCA Fifty-Eighth Quarter, Guidehouse determined that the DOE timely implemented 1.0% of Payment Orders, 1.8% of Payment Action Items, 9.5% of Service Orders, and 9.0% of Service Action Items.

It is worth noting that the percentage of Timely Implemented Payment Orders and Timely Implemented Payment Action Items fell below 2% and Timely Implemented Service Orders and Timely Implemented Service Action Items fell below 10% in the final PCA Fifty-Eighth Quarterly report.  The table below and the graph on the following page depict the Timely Implemented percentages in the final reports from Q50A through Q58A.

| Final Quarterly Reports | 50A 10/12/2021-1/10/2022 | 51A 1/11/2022-4/11/2022 | 52A 4/12/2022-7/11/2022 | 53A 7/12/2022-10/10/2022 | 54A 10/11/2022-1/9/2023 | 55A 1/10/2023-4/10/2023 | 56A 4/11/2023-7/10/2023 | 57A 7/11/2023-10/9/2023 | 58A 10/10/2023-1/8/2024 |
|---|---|---|---|---|---|---|---|---|---|
| Timely Implemented Payment Orders | 1.9% | 2.3% | 4.0% | 3.0% | 1.9% | 4.1% | 8.1% | 3.1% | 1.0% |
| Timely Implemented Payment Action Items | 2.3% | 3.1% | 4.9% | 4.3% | 1.7% | 3.8% | 6.7% | 3.9% | 1.8% |
| Timely Implemented Service Orders | 7.8% | 5.8% | 2.5% | 8.6% | 5.8% | 7.2% | 12.6% | 10.4% | 9.5% |
| Timely Implemented Service Action Items | 5.9% | 5.2% | 2.6% | 6.0% | 4.0% | 5.9% | 9.2% | 7.2% | 9.0% |

7





**VI.  Limitations**

The conclusions, observations and assessments detailed in this report are based on Guidehouse's methodology and the procedures performed. Had Guidehouse performed additional procedures or testing, it is possible that our conclusions, observations and assessments could be different. Guidehouse also relied on information provided by the DOE and AFC during its work.

**VII.  Conclusion**

Guidehouse has continued with its analysis of the Injunctive Relief Subclass Orders and Action Items relating to subsequent reporting periods.

8

[Appendices Omitted]