# Exhibit B



# L.V. v. D.O.E.

# 03 Civ. 9917 (RJH)

# Stipulation and Agreement of Settlement

# Independent Auditor's Post Corrective Action

# March 2025 Limited Review

# August 8, 2025



**Table of Contents**

I.      Introduction ........................................................................................................................1
II.     Executive Summary and Statistical Overview...................................................................2
III.    Implementation of Service Action Items by Category ......................................................4
IV.     Implementation of Payment Action Items by Category ....................................................5
V.      Comparison of Timely Implemented Orders and Action Items.........................................7
VI.     Limitations ........................................................................................................................10
VII.    Conclusion ........................................................................................................................10

i

**Appendices**

A. List of March 2025 Limited Review Unimplemented Orders
B. List of March 2025 Limited Review Timely Implemented Orders
C. List of March 2025 Limited Review Uncounted Orders
D. March 2025 Limited Review Orders Grouped with Related Action Items
E. List of March 2025 Limited Review Unimplemented Action Items
F. List of March 2025 Limited Review Timely Implemented Action Items
G. List of March 2025 Limited Review Uncounted Action Items



I. Introduction

On December 12, 2003, Advocates for Children of New York ("AFC") and Milbank, Tweed, Hadley & McCloy LLP ("Milbank") filed a class action, L.V. v. D.O.E. 03 Civ. 9917 (RJH). The class was comprised of parents of special needs children who alleged that while they had obtained a favorable order from an Impartial Hearing Officer against the New York City Department of Education ("DOE") or stipulation of settlement placed on the record at an impartial hearing with the DOE, the DOE failed to obtain full and timely implementation of such order or settlement.

On December 11, 2007, the Corporation Counsel of the City of New York on behalf of the DOE and AFC and Milbank on behalf of Lead Plaintiffs and Class[1] ("Plaintiffs"), referred to collectively herein as ("the Parties"), signed a Stipulation and Agreement of Settlement ("Stipulation") in connection with L.V. v. D.O.E. 03 Civ. 9917 (RJH). Pursuant to the terms of the Stipulation, Daylight Forensic & Advisory LLC ("Daylight") was appointed as Independent Auditor on March 27, 2008. On May 9, 2008, the DOE formally engaged Daylight to commence the independent audit.

The Stipulation requires the Independent Auditor to generate reports concerning the DOE's implementation of Orders and Action Items for all Quarterly Measurement Periods (each a "Quarterly Report") and Benchmark Measurement Periods (each a "Benchmark Report").

Guidehouse[2] issued the following reports in conjunction with the Injunctive Relief Subclass: (1) Gap Period Report (dated August 6, 2008); (2) Eighth Quarterly Report (dated January 9, 2009); (3) Eighth Quarterly Report and Eighth Benchmark Report (dated June 11, 2009); and (4) Post Corrective Action[3] Eighth Quarterly Report (dated April 9, 2010).[4]

Guidehouse issued reports in conjunction with the Injunctive Relief Subclass, including the Post Corrective Action ("PCA") First Benchmark Report dated August 13, 2010, as well as reports for the PCA Third Quarter through the PCA Fifty-Eighth Quarter. Guidehouse issued the final PCA quarterly reports during the time period of August 13, 2010 through July 29, 2025.

---

[1] Pursuant to Section I.1.f. of the Stipulation, "Class" is defined as the Compensatory Relief Subclass and the Injunctive Relief Subclass.

[2] On October 11, 2019, Guidehouse LLP completed its acquisition of Navigant. We refer to Navigant and Daylight as 'Guidehouse' for consistency purposes under the terms of this engagement. Guidehouse continues to perform according to the terms of the Engagement Letter, using the same analysis and methods and without changes to the schedule, price, or level of effort.

[3] Pursuant to Section III.10.a. of the Stipulation, "If the DOE fails to meet the Eighth Benchmark or Eighth Benchmark at the required date…the DOE must, within three months of issuance of the final Benchmark Report notifying the parties of the missed benchmark, formulate and implement a Corrective Action Plan designed to correct the problems that caused the DOE to miss the benchmark at issue."

[4] Pursuant to Sections I.1.r. and I.1.h of the Stipulation, "Injunctive Relief Subclass" is defined as the class of all persons who, on or subsequent to the Commencement Date of December 12, 2003, (1) obtain or obtained a favorable Order by an Impartial Hearing Officer against the DOE or stipulation of settlement placed on the record at an impartial hearing with the DOE and (2) fail or failed to obtain full and timely implementation of such Order or settlement.



The current report focuses on Guidehouse's review of Injunctive Relief Subclass Orders and summarizes our analysis of the Total Orders and Total Action Items that were part of the March 2025 Limited Review and includes Orders issued between January 25, 2025 and February 24, 2025 with Action Item final due dates between March 1, 2025 and March 31, 2025.

The terms defined in Section I. Definitions of the Stipulation apply to the present report.

II. **Executive Summary and Statistical Overview**

During the March 2025 Limited Review, Guidehouse determined that the DOE Timely Implemented[5] 28.1% of Service Orders;[6] 24.4% of Service Action Items; 7.0% of Payment Orders;[7] and 9.3% of Payment Action Items during this timeframe.

The following table summarizes the counted March 2025 Limited Review Orders and Action Items by type of relief:

|  | Service Orders | Payment Orders | Service Action Items | Payment Action Items |
|---|---|---|---|---|
| **Timely Implemented** | 74 (28.1%) | 32 (7.0%) | 136 (24.4%) | 100 (9.3%) |
| **Unimplemented**[8] | 189 (71.9%) | 427 (93.0%) | 421 (75.6%) | 979 (90.7%) |
| **Total** | 263 | 459 | 557 | 1,079 |

---

[5] "Timely Implemented" is defined as an Order or Action Item that was implemented within the length of time specified in the Order or, if no such time is specified in the Order, within 35 days of issuance (of the Order itself or of the Order containing the Action Item), except that particular Orders or Action Items will also be considered to have been timely implemented for measurement purposes pursuant to the additional requirements included in Section I.1.ii. of the Stipulation.

[6] Pursuant to Section I.1.dd. of the Stipulation, "Service Order" is defined as an Order, or all Action Items within an Order that requires the DOE to take any action other than make a payment directly to a parent, private service provider, or private school.

[7] Pursuant to Section I.1.v. of the Stipulation, "Payment Order" is defined as an Order, or all Action Items within an Order, requiring the DOE to make a direct payment to a parent, private service provider, or private school.

[8] Pursuant to Section I,1. mm of the Stipulation, "Unimplemented" or "Unimplemented Order" is defined as an Order or Action Item that is found by the Independent Auditor to have not been Timely Implemented. Guidehouse assessed Action Items as Unimplemented when 1) there was no indication that implementation occurred or 2) the analysis determined that implementation occurred after the due date. Orders were deemed Unimplemented when one or more of the Action Items associated with the Order was determined to be Unimplemented.



In addition, Guidehouse determined that 3 Orders and 16 Action Items issued during the March 2025 Limited Review were Uncounted.[9] There were 91 Orders issued during the March 2025 Limited Review that did not include Action Items, such as Orders of Dismissal and Orders where the parent's relief was denied.

Further, Guidehouse identified 61 Orders (comprising 129 Action Items) and 36 additional Action Items where the DOE was not required to implement the Action Items because they were beyond the scope of review. These Action Items were beyond our scope of review for multiple reasons, including but not limited to:

- Situations where the parent refused an ordered service;
- Implementation performed pursuant to a prior Order; and
- Payment was made in conjunction with a previously analyzed Action Item.[10]

---

[9] Pursuant to Section I.1. II. of the Stipulation, Orders or Action Items are deemed "Uncounted Orders" or "Uncounted Action Items," respectively, when an Order or Action item could not be Timely Implemented because:

i. It required the DOE to take action that would either violate applicable law or is factually impossible;
ii. The DOE had made a substantial showing of attempts to reach the parent and attempts to obtain compliance with the parent's obligations under the Order;
iii. It required the provision of a DOE designated shortage area service which includes, inter alia, occupational, physical and speech therapy and where the DOE made a substantial showing that it offered the parent an appropriate substitute service within 35 calendar days of the issuance of the relevant Order or Action Item; and
iv. The Order or Action item was timely appealed by the DOE.

[10] A complete list of these Orders and Action Items will be provided to the Parties.



### III. Implementation of Service Action Items by Category

Guidehouse reviewed the 557 counted Service Action Items and noted that the top three most frequently identified categories were Speech and Language Therapy (103 Action Items or 18.5%), followed by Occupational Therapy (90 Action Items or 16.2%) and Transportation (86 Action Items or 15.3%).

The categories with the highest percentage of Unimplemented Action Items with respect to the total number of counted Service Action Items within the category were CSE Evaluation (100.0%), followed by Assistive Technology Services (92.9%) and Reconvene Hearing or Meeting (91.1%).

The following table sets forth the top 10 Service Action Item categories based on the number of counted Action Items:

|  | Action Item Category | Total Counted Service Action Items | % Total Counted Service Action Items | # Timely Implemented by Category | % Timely Implemented by Category | # Unimplemented by Category | % Unimplemented by Category |
|---|---|---|---|---|---|---|---|
| 1 | Speech and Language Therapy | 103 | 18.5% | 30 | 29.1% | 73 | 70.9% |
| 2 | Occupational Therapy | 90 | 16.2% | 33 | 36.7% | 57 | 63.3% |
| 3 | Transportation | 86 | 15.3% | 37 | 43.0% | 49 | 57.0% |
| 4 | Reconvene Hearing or Meeting | 56 | 10.1% | 5 | 8.9% | 51 | 91.1% |
| 5 | CSE Evaluation | 41 | 7.4% | 0 | 0.0% | 41 | 100.0% |
| 6 | Counseling | 34 | 6.1% | 12 | 35.3% | 22 | 64.7% |
| 7 | Physical Therapy | 33 | 5.9% | 7 | 21.2% | 26 | 78.8% |
| 8 | Paraprofessional | 22 | 3.9% | 4 | 18.2% | 18 | 81.8% |
| 9 | Comp Services | 17 | 3.1% | 3 | 17.6% | 14 | 82.4% |
| 10 | Assistive Technology Services | 14 | 2.5% | 1 | 7.1% | 13 | 92.9% |
|  | Remaining Categories with 12 or Less Action Items | 61 | 11.0% | 4 | 6.6% | 57 | 93.4% |
|  | TOTAL | 557 | 100.0% | 136 | 24.4% | 421 | 75.6% |

4



### IV. Implementation of Payment Action Items by Category

Guidehouse reviewed the 1,079 counted Payment Action Items and noted 872 Action Items categorized as prospective payments and 207 Action Items categorized as reimbursements. The top three most frequently identified categories of prospective Payment Action Items were Special Education Teacher Support Services (201 Action Items or 23.1%), followed by Tuition (158 Action Items or 18.1%), and Compensatory Services (141 Action Items or 16.2%).

The categories with the highest percentage of Unimplemented Action Items with respect to the total number of counted prospective Payment Action Items within the category were Compensatory Services (100.0%), followed by Special Education Teacher Support (96.0%) and Private Evaluations Ordered (95.1%).

The following table sets forth the top 10 prospective Payment Action Item categories based on the number of counted Action Items:

| | Action Item Category | Total Counted Payment Action Items | % Total Counted Payment Action Items | # Timely Implemented by Category | % Timely Implemented by Category | # Unimplemented by Category | % Unimplemented by Category |
|---|---|---|---|---|---|---|---|
| 1 | Special Education Teacher Support Services | 201 | 23.1% | 8 | 4.0% | 193 | 96.0% |
| 2 | Tuition | 158 | 18.1% | 26 | 16.5% | 132 | 83.5% |
| 3 | Compensatory Services | 141 | 16.2% | 0 | 0.0% | 141 | 100.0% |
| 4 | Speech and Language Therapy | 93 | 10.7% | 5 | 5.4% | 88 | 94.6% |
| 5 | Occupational Therapy | 64 | 7.3% | 5 | 7.8% | 59 | 92.2% |
| 6 | Private Evaluations Ordered | 41 | 4.7% | 2 | 4.9% | 39 | 95.1% |
| 7 | SEIT Services | 36 | 4.1% | 2 | 5.6% | 34 | 94.4% |
| 8 | ABA Therapy | 31 | 3.6% | 7 | 22.6% | 24 | 77.4% |
| 9 | Parent Training | 23 | 2.6% | 3 | 13.0% | 20 | 87.0% |
| 10 | Physical Therapy | 17 | 1.9% | 2 | 11.8% | 15 | 88.2% |
| | Remaining Categories with 16 or Less Action Items | 67 | 7.7% | 5 | 7.5% | 62 | 92.5% |
| | TOTAL | 872 | 100.0% | 65 | 7.5% | 807 | 92.5% |

Guidehouse

The top three most frequently identified categories of reimbursement Action Items were Tuition (131 Action Items or 63.3%), followed by Special Education Teacher Support Services (18 Action Items or 8.7%) and Transportation (17 Action Items or 8.2%).

The categories with the highest percentage of Unimplemented Action Items with respect to the total number of counted reimbursement Action Items within the category were Special Education Teacher Support Services (94.4%) and Transportation (88.2%).

The following table sets forth the top three reimbursement Action Item categories based on the number of counted Action Items:

| | Action Item Category | Total Counted Payment Action Items | % Total Counted Payment Action Items | # Timely Implemented by Category | % Timely Implemented by Category | # Unimplemented by Category | % Unimplemented by Category |
|---|---|---|---|---|---|---|---|
| 1 | Tuition | 131 | 63.3% | 29 | 22.1% | 102 | 77.9% |
| 2 | Special Education Teacher Support Services | 18 | 8.7% | 1 | 5.6% | 17 | 94.4% |
| 3 | Transportation | 17 | 8.2% | 2 | 11.8% | 15 | 88.2% |
| | Remaining Categories with 11 or Less Action Items | 41 | 19.8% | 3 | 7.3% | 38 | 92.7% |
| | TOTAL | 207 | 100.0% | 35 | 16.9% | 172 | 83.1% |

6



### V. Comparison of Timely Implemented Orders and Action Items

Guidehouse identified an increase in the percentage of Timely Implemented Orders and Timely Implemented Action Items in the March 2025 Limited Review. Guidehouse analyzed the statistics from the final PCA Fifty-First through the PCA Fifty-Eighth Quarterly Reports and determined that the DOE timely implemented, on average, 3.4% of Payment Orders, 3.8% of Payment Actions, 7.8% of Service Orders and 6.1% of Service Action Items. In the March 2025 Limited Review, Guidehouse determined that the DOE timely implemented 7.0% of Payment Orders, 9.3% of Payment Action Items, 28.1% of Service Orders, and 24.4% of Service Action Items.

It is worth noting that the percentage of Timely Implemented Payment Orders and Timely Implemented Payment Action Items remain below 10% and Timely Implemented Service Orders and Timely Implemented Service Action Items remain below 30% in the final March 2025 Limited Review report. The tables below indicate the percentages of Timely Implemented Payment and Service Orders and Action Items from Guidehouse's PCA Q51A through Q58A reports as well as the March 2025 Limited Review.

| Final Quarterly Reports/March Limited Review | 51A 1/11/2022-4/11/2022 | 52A 4/12/2022-7/11/2022 | 53A 7/12/2022-10/10/2022 | 54A 10/11/2022-1/9/2023 | 55A 1/10/2023-4/10/2023 | 56A 4/11/2023-7/10/2023 | 57A 7/11/2023-10/9/2023 | 58A 10/10/2023-1/8/2024 | March 2025 1/25/2025-2/24/2025 |
|---|---|---|---|---|---|---|---|---|---|
| Timely Implemented Payment Orders | 2.3% | 4.0% | 3.0% | 1.9% | 4.1% | 8.1% | 3.1% | 1.0% | 7.0% |
| Timely Implemented Payment Action Items | 3.1% | 4.9% | 4.3% | 1.7% | 3.8% | 6.7% | 3.9% | 1.8% | 9.3% |
| Timely Implemented Service Orders | 5.8% | 2.5% | 8.6% | 5.8% | 7.2% | 12.6% | 10.4% | 9.5% | 28.1% |
| Timely Implemented Service Action Items | 5.2% | 2.6% | 6.0% | 4.0% | 5.9% | 9.2% | 7.2% | 9.0% | 24.4% |

7



The table below indicates the percentages of Timely Implemented Payment and Service Orders and Action Items from Guidehouse's final PCA Q51A through Q58A reports as well as the March 2025 Limited Review.



8



The table below indicates the categories with the highest percentages of Unimplemented Payment and Service Action Items from Guidehouse's final PCA Q51A through Q58A reports as well as the March 2025 Limited Review.



9



The table below indicates the categories with the highest percentages of Timely Implemented Payment and Service Action Items from Guidehouse's final PCA Q58A report as well as the March 2025 Limited Review.



VI. **Limitations**

The conclusions, observations and assessments detailed in this report are based on Guidehouse's methodology and the procedures performed. Had Guidehouse performed additional procedures or testing, it is possible that our conclusions, observations and assessments could be different. Guidehouse also relied on information provided by the DOE and AFC during its work.

VII. **Conclusion**

Guidehouse continues with its analysis of the Injunctive Relief Subclass Orders and Action Items relating to subsequent reporting periods. If the Parties decide it would be worthwhile, Guidehouse can expand the limited review to a full quarter of Orders and Action items or conduct a limited review of Orders and Action Items with final due dates in April 2025.

[Appendices Omitted]