

**MURIEL GOODE-TRUFANT**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**JEFFREY S. DANTOWITZ**
Room 2-121
Phone: (212) 356-0876
jdantowi@law.nyc.gov
(not for service)

August 14, 2025

**VIA ECF**
Hon. Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York

      Re:   LV v. NYC Dep't of Education, et al., 03 Civ. 9917 (LAP)

Dear Judge Preska:

      This office represents Defendants in the above-referenced action. I write in response to the pre-motion letter filed by Plaintiffs on August 11, 2025 (ECF No. 387).[1] Although Defendants will not here address each of Plaintiffs' accusations, we will be prepared to do so at the September 18 conference.

      Defendants strongly disagree with the assertions in Plaintiff's letter, which leaves the reader with the entirely false impression that Defendants have made no strides whatsoever in improving their implementation processes and are instead deliberately ignoring their obligations. Nothing could be further from the truth. In reality, the record demonstrates that Defendants have dedicated a tremendous amount of time and resources to meet their obligations and have made significant progress towards increasing staffing, improving processes, and upgrading technology systems.

      As the Court may recall, the Independent Auditor, Guidehouse, issues periodic reports concerning Defendants' compliance with the benchmarks set forth in the Stipulation and Agreement of Settlement ("Stipulation"). Plaintiffs cite to Guidehouse's most recent report issued July 29, 2025 (Exhibit A to their letter) as evidence of Defendants' supposed failings. That report, however, concerns orders with due dates between November 14, 2023 through February 12, 2024

---

[1] At 2622 words, Plaintiffs' letter is over twice the word limit permitted by paragraph 2 of the Court's Individual Practices.

– that is, only four to seven months after the issuance of the Court's July 19, 2023 Order. Notably, many of the Special Master's recommendations as memorialized in that Order had not yet come due during this period. Moreover, it would be unrealistic to expect those recommendations to have achieved dramatic improvement during the infancy of their adoption.

Recently, the Special Master arranged for Guidehouse to conduct a limited review of orders issued with final due dates between March 1-31, 2025. This limited review showed that since the issuance of Guidehouse's report, Defendants' timely implementation rates have dramatically increased – timely implementation of Service Orders increased 196%; timely compliance of Service Action Items increased by 171%; timely compliance of Payment Orders increased 600%, and timely compliance of Payment Action Items increased by 417%.[2]

Guidehouse's limited review also had a critical flaw that caused Defendants' timely implementation rate to be under-stated: in computing Defendants' compliance rate, Guidehouse chose not to consider the supplemental outreach data[3] that Defendants provided because the data was not in the system of record (DAITS). Had Guidehouse considered this data in determining whether Defendants had made "substantial outreach attempts," the total number of items to be included in the denominator would have been reduced per ¶ ll(ii) of the Stipulation, resulting in an even higher compliance rate. To resolve this gap in compliance reporting, Defendants expect to integrate all data assets to produce a full set of Key Performance Indicators ("KPIs") with the rollout of IHMS as required by the July 19, 2023 Order; IHMS is currently expected to launch in late December 2025.

Defendants' internal performance metrics reflect similar progress. Leveraging improvements in staffing and customer service, Defendants have paid a total of $391.5 million in tuition payments for the 2024-2025 school year, up from $240.4 million in the 2023-2024 school year, reflecting a 63% increase in tuition payments. Furthermore, Defendants also paid $458.1 million to independent service providers in the 2024-2025 school year, up from $383 million last school year, reflecting a 20% increase in such payments.

Defendants' timeliness has also improved. Contrary to Plaintiffs' assertions regarding delays, Defendants are current with respect to the unpacking of orders for the 2025-26 school year and in resolving some backlog from the spike of filings from the 2023-2024 school year. At present, the Implementation Unit is taking a median number of 13 calendar days to unpack

---

[2] The failure to "timely implement" an order should not be understood as meaning that the order was never implemented; rather, it simply means that the order has not been implemented within the timeframe described in the Stipulation as measured by Guidehouse.

[3] Starting on January 8, 2025, Defendants launched a Customer Service Platform staffed by its customer service vendor, Nagarro. This data is kept on a separate system but was exported to an Excel report from which the number of outreach attempts (*i.e.,* emails sent, calls, chats) was manually compiled. Defendants provided this information via Excel to Guidehouse with their submission of their comments to Guidehouse's draft report, yet Guidehouse chose not to consider it.

orders after receiving them, though many orders are unpacked the same or next day. Additionally, for the Parents' Representatives who have chosen to utilize the new Customer Service Platform launched on January 8, 2025, the Implementation Unit is processing payment authorizations within 32 calendar days (which is faster than the 35-day period set forth in the Stipulation). Of note, one impediment to a quicker turnaround time is the need for Defendants to wait for Parents' Representatives to submit requested vendor information so that payment can be authorized. Currently, once the Implementation Unit unpacks the order and generates the initial outreach, Defendants wait on average 10-15 days for Parents' Representatives to respond with the necessary information.

As this Court has explained, "a court's inherent power to hold a party in civil contempt should only be exercised when: (1) the order the party allegedly failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the party has not diligently attempted in a reasonable manner to comply. *Milburn v. Coughlin (In re Bryant)*, 2012 U.S. Dist. LEXIS 5255, *3-4 (S.D.N.Y. Jan. 12, 2012 (Preska, J.) (citing *U.S. v. N.Y.C. Dist. Council of N.Y.C.*, 229 Fed. Appx. 14, 18 (2d Cir. 2007) and *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989).

Defendants' actions – as described in their letters to the Court and in conferences – demonstrate Defendants' diligent efforts to comply with their obligations and to address the deficiencies that the July 19, 2023 Order was intended to correct. The improvements noted above are the result of Defendants' sustained and good-faith efforts to improve the implementation process, and reflect improvements in Defendants' systems, processes, and staffing. Under these circumstances, Plaintiffs cannot satisfy their burden for a finding of contempt.

Defendants remain committed to meeting their obligations, working with the Special Master, and collaborating with Plaintiffs where it advances solutions.[4] Rather than the Court imposing a receiver (whose described duties appear to be duplicative of the authority of the Special Master) or daily fines, the path forward should focus on building on these improvements, addressing remaining gaps, and ensuring that students receive their ordered services in a timely manner.

---

[4] In their letter, Plaintiffs note that "DOE has repeatedly refused to communicate with Plaintiffs' counsel." Following the issuance of the July 19, 2023 Order, Defendants initially participated in weekly meetings with Plaintiffs' counsel (AFC and former co-counsel Milbank LLP), and the Special Master. Rather than engaging with Defendants in a collaborative spirit, however, Plaintiffs frequently adopted an adversarial and aggressive manner and made unacceptable demands. Because these joint meetings were not productive, Defendants chose to cease attending. Defendants, however, continued to meet with the Special Master, who was able to mediate differences and achieve progress. Moreover, Defendants remain committed towards progress and to continue collaborating with Plaintiffs' counsel using all viable and appropriate channels of communication, including through the Special Master and the LV Communications Advisor, as well as established feedback mechanisms for stakeholders.

Thank you for your consideration of the foregoing. Defendants look forward to sharing updates about their progress at the upcoming conference on September 18, 2025.

Respectfully,

/s/ Jeffrey S. Dantowitz

Jeffrey S. Dantowitz
Assistant Corporation Counsel

cc:    All counsel of record
       Special Master Irwin
        (via ECF)